2000 OK CIV APP 52

**Robert G. OZMENT, Plaintiff/Appellant,**

**v.**

**Beverly A. OZMENT, Defendant/Appellee.**

**No. 92,866.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 31, 2000.

Michelle M. Robertson, Hammons & Associates, Inc., Oklahoma City, Oklahoma, For Appellant.

David F. Howell, Midwest City, Oklahoma, For Appellee.

JOPLIN, Judge:

¶1 Plaintiff/Appellant Robert G. Ozment (Husband) seeks review of the trial court's order granting relief to Defendant/Appellee Beverly A. Ozment (Wife) on Wife's "Application to Amend Qualified Domestic Relations Order." In this appeal, Husband asserts the trial court's order constitutes an untimely and impermissible modification of the parties' agreed-to division of property memorialized in the parties' decree of divorce, exceeding the trial court's jurisdiction.

¶2 The parties married in 1962 and divorced by consent decree—approved by the trial court—filed in May 1994. The decree recites in pertinent part:

[T]he Court has jurisdiction over the parties and subject matter of this action; ... the parties have reached an agreement regarding the issues in this case, and ... said agreement is reasonable and equitable and should be approved as set forth hereinafter.

. . .

... [Husband] is awarded as his sole and separate property free and clear of any right title or interest of [Wife], the following:

. . .

Fifty percent (50%) of [Husband's] pension earned while employed with the State of Oklahoma, for the period beginning with his employment through December 14, 1992; AND

All present and future right, title and interest to [Husband's] Pension earned while employed with the State of Oklahoma, from December 15, 1992 through the termination of [Husband's] employment, free and clear of any claims of [Wife]. . . .

... [Wife] is awarded as his sole and separate property free and clear of any right title or interest of [Husband], the following:

. . .

Fifty percent (50%) of [Husband's] pension earned while employed with the State of Oklahoma, for the period beginning with his employment through December 14, 1992.

... [A]ll interest [Wife] has in [Husband's] pension, as above specified, shall

be divided pursuant to a Qualified Domestic Relations Order issued by this Court.

By "Qualified Domestic Relations Order"—apparently drafted by counsel for Wife and filed in August 1995—the trial court directed in pertinent part:

Each of the parties is hereby awarded an interest in and to [Husband's pension] plan, with [Wife's] interest to consist of Fifty percent (50%) of the amount credited to [Husband's] retirement account for the period ending December 14, 1992 and [Husband's] interest to consist of the remaining fifty percent (50%) for that period. . . .

. . .

The Oklahoma Public Employees Retirement System is hereby directed and ordered pursuant to this Qualified Domestic Relations Order, to pay directly to [Wife] her share of the benefits of [Husband's retirement] Plan as set forth in paragraphs . . . seven above, beginning with the actual retirement of [Husband], or at the time . . . [Husband] elects to receive a lump sum distribution of his retirement account upon withdrawal from the system.

¶ 3 In December 1997 and February 1998, the Oklahoma Public Employees Retirement System (OPERS) notified Wife that she would receive a total of $5,995.72 payable in monthly installments of $845.21 as her share of Husband's retirement. Upon investigation, Wife learned that OPERS had calculated Wife's entitlement by reference only to Husband's actual contributions to the retirement plan as of the determinative date, not to the actual plan benefit amount payable to Husband.

¶ 4 Challenging OPERS construction of the QDRO and consequent calculation of Wife's share of Husband's retirement as contrary to the specific terms of the parties' divorce decree, Wife filed her "Application to Amend Qualified Domestic Relations Order." Husband objected, arguing that Wife's action constituted a time-barred and impermissible modification of the now-final, agreed-to division of property contained in the parties' decree of divorce, and that the trial court lacked jurisdiction to grant relief. The trial court ultimately disagreed with Husband, de-

nied his objections and granted relief to Wife by order providing:

. . . [T]he Qualified Domestic Relations Order should be corrected to reflect the property division as awarded in the Decree of Divorce which is fifty percent (50%) ( [Husband's] benefits through December 14, 1992). That paragraph 7 of the Qualified Domestic Relations Order should provide that [Wife' s] interest to consist of fifty percent (50%) of [Husband's] benefits for the period ending December 14, 1992, or in the event that the Order may not provide for a percentage of the benefit accrued on a given date, then the Order should provide that the [Husband] be entitled to that percentage which equals one-half of the number of years of [Husband's] employment through December 14, 1992, divided by the number of years of [Husband's] employment where benefits were accrued through the State of Oklahoma Employees Retirement System.

¶ 5 In his first proposition on appeal, Husband asserts the trial court's order constitutes an impermissible modification of the property division provisions of the parties' agreed-to and now final decree of divorce. 43 O.S. § 134(A). In his third proposition, Husband argues the trial court lacked jurisdiction to modify the now final property division provisions of the parties' consent decree of divorce.

¶ 6 We first acknowledge that "[t]he property division provisions of a divorce decree stand inviolate by actions of the divorced parties, including the remarriage of those parties, unless the action taken is to vacate, set aside or modify the decree in a manner authorized by statute." *Henderson v. Henderson*, 1988 OK 111, ¶ 8, 764 P.2d 156, 159. We likewise acknowledge that by force of § 134(A), "[p]ayments pertaining to a division of property are irrevocable and not subject to subsequent modification by the court making the award." In the present case, however, and as we hereinafter explain, we see nothing in the trial court's order which purports to *modify or change* any of the agreed-to property division provisions of the parties' divorce decree.

¶ 7 In his second proposition, Husband asserts that by force of Oklahoma statutes, particularly 12 O.S. §§ 1031, 1031.1, 1032, 1033, and 1038, *any* order of the trial court may not be modified absent a timely application setting forth a statutory ground. So, says Husband, because Wife failed to timely apply for modification of the QDRO, and/or failed to prove any of the statutory requisites for modification of the QDRO, the trial court erred in granting Wife relief.

¶ 8 Wife responds, arguing first, that the trial court retains the authority, by order *nunc pro tunc*, to " 'correct the journal entry so that the words have the meaning intended, in that [the words] reflect the Judgment actually rendered or pronounced.' " *Fowler v. Zimmerman*, 1963 OK 158, ¶ 14, 383 P.2d 682, 685. That is, says Wife, the office of correction *nunc pro tunc* extends "to make [the judgment] speak the truth about what actually transpired or was considered and adjudged." *Stork v. Stork*, 1995 OK 61, ¶ 7, 898 P.2d 732, 736.

¶ 9 Wife secondly argues that the award to her of "Fifty percent (50%) of [Husband's] pension earned" irreconcilably conflicts with both the QDRO provision directing payment to Wife of "Fifty percent (50%) of the amount credited to [Husband's] retirement account" and OPERS construction of the QDRO provision as entitling Wife to only one-half of Husband's actual contributions. So says Wife, the decree and QDRO thus *require* judicial construction to bring the terms of the QDRO into conformity with the final provisions of the divorce decree, the terms of which—awarding Wife one-half of Husband's retirement "benefit"—neither Husband nor Wife dispute. *Stork*, 1995 OK 61, ¶ 15, 898 P.2d at 739.

 ¶ 10 Under the Employee Retirement Income Security Act of 1974 (ERISA), a "qualified domestic relations order" "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [covered retirement] plan." 29 U.S.C. § 1056(d)(3)(B)(i). Essentially, a QDRO constitutes the mechanism by which the terms of a "domestic relations order,"

particularly vis-a-vis covered retirement programs, is enforced and collected. *Nichols v. Nichols*, 1995 OK CIV APP 22, 891 P.2d 1303.

¶ 11 We find no Oklahoma authority directly on-point. In a strikingly similar case, however, the Supreme Court of Wyoming recognized under state law the trial court's statutory *nunc pro tunc* authority to conform a QDRO to the terms of the underlying divorce decree where a conflict between the QDRO and divorce decree is apparent, so long as no impermissible modification of the property divisions provisions of the decree is effected. *Elsasser v. Elsasser*, 989 P.2d 106 (Wy.1999). After first observing that orders *nunc pro tunc* correct only "clerical, not judicial, errors," the Wyoming Supreme court found no impermissible modification of the division of property by the amendment of a QDRO *nunc pro tunc*:

> ... A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents the judgment as entered from accurately reflecting the judgment that was rendered. (Citation omitted.) In addition, [an order nunc pro tunc] is designed to clarify, as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment. (Citation omitted.) ...
>
> [W]e [have previously] noted that in past domestic relations decisions, this Court has recognized that "retirement funds, whether vested, nonvested, or not matured, are marital property divisible upon divorce." (Citation omitted.) We reiterated the elementary principal that "[t]he trial court does not have power to modify a decree * * * if it is in the nature of a property settlement." (Citation omitted.) However, we did not question that a divorce decree could be clarified by the addition of a qualified domestic relations order. Instead, we found that the trial court erred by failing to amend the order in compliance with its original intent.
>
> That is not the case here. The amended order directly facilitates the intent expressed in the stipulation and in the original decree. (Citation omitted.) ...

Husband's erroneous construction of the divorce provisions clearly underscores the appropriateness of the trial court's decision to clarify its original ruling.

The parties' property settlement clearly stated that Wife was to receive half of the Tier Two benefits earned during the marriage when Husband retires. The original decree added the finding that funds invested in the retirement plan were marital funds and that Wife's share was to be distributed upon Husband's retirement to whatever maximum extent allowable by law. Husband did not appeal this order. The clerical error in this case is the trial court's omission of the specific language which allows Wife to receive the maximum extent allowable by federal law. This omission was corrected by the language amending the original decree.

Furthermore, the amending language did not change the provisions of the original property settlement in the divorce decree. Wife's share is limited to one-half of the retirement benefits which accumulated during the marriage. There is nothing in the original order which allows Husband to "voluntarily" distribute half of the benefits in the form of alimony. Thus, we find the district court properly invoked the [*nunc pro tunc*] authority . . . in issuing the Divorce Decree Nunc Pro Tunc.

*Elsasser*, 989 P.2d at 109.

▇▇▇ ¶ 12 In this respect, Wyoming jurisprudence construing that state's statutory *nunc pro tunc* authority parallels Oklahoma jurisprudence construing our state's common law[1] *nunc pro tunc* authority. *Cf., Elsasser,* 989 P.2d at 109; with, *Stork,* 1995 OK 61, ¶ 7, 898 P.2d at 736. In Oklahoma:

Orders nunc pro tunc are designed neither to bring into the record what a court might or should have done nor what it might or should have intended to do. The function of a nunc pro tunc entry is to

amend a judgment to make it speak the truth about what actually transpired or was considered and adjudged. (Footnote omitted.) Nunc pro tunc relief is limited to supplying inadvertent clerical omission and correcting facial mistakes in recording judicial acts that actually took place. (Footnote omitted.) In short, a nunc pro tunc order can and will place of record what was actually decided by the court but was incorrectly recorded. The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment.

*Stork,* 898 P.2d at 736–737.

▇▇▇ ¶ 13 In the present case, the parties' agreement, merged into the divorce decree, granted Wife one-half of Husband's "pension earned" for that period of the marriage during which Husband accrued benefits under the state retirement plan. In this context, the plain meaning of the words "pension earned" can only refer to the "benefit" amount Husband would be entitled to receive upon retirement, and Husband does not argue otherwise.

¶ 14 However, the language of the QDRO delineates Wife's interest in Husband's retirement as one-half of the "amount credited to [Husband's] retirement account." The OPERS administrator read the QDRO as granting to Wife only one-half of Husband's actual contributions—a sum apparently less than the value of Husband's pension benefit. So construed, the QDRO thus clearly conflicts with the express terms of the divorce decree.

¶ 15 Thus, and notwithstanding the use of the term "amend," inasmuch as a QDRO merely enforces the terms of the underlying divorce decree, we believe the trial court, under the proper office of an order *nunc pro tunc,* appropriately construed and clarified the QDRO to render the QDRO consistent

---

1. As the Supreme Court observed in *Depuy v. Hoeme,* 1989 OK 42, 775 P.2d 1339, "A nunc pro tunc entry may be supplied at any time," and "[t]he common-law power of a trial court to memorialize its actions nunc pro tunc is not limited by our statutes." 1989 OK 42, ¶ 11, 775 P.2d at 1347, fn. 30.

with the terms of the parties' divorce decree. As such, the trial court affected no impermissible modification of the parties' divorce decree.

¶ 16 The order of the trial court is therefore AFFIRMED.

HANSEN, V.C.J., and ADAMS, J., concur.