2002 OK 25

**Eddie D. JACKSON, Plaintiff/Appellant,**

v.

**Deborah JACKSON (now Deborah Ambrose), Defendant/Appellee.**

No. 93,395.

Supreme Court of Oklahoma.

April 9, 2002.

420

Mark Monfort, Norman, OK, for Defendant/Appellee.

LAVENDER, J.

¶ 1 This cause requires us to decide if the trial court had authority to issue a Qualified Domestic Relations Order (1999 QDRO) after two prior QDROs (1993 QDRO and 1996 QDRO) were entered. We hold: in that Deborah Jackson (former wife or appellee) was awarded a formula-driven percentage of Eddie D. Jackson's (former husband or appellant) future benefit from the Oklahoma Firefighters Pension and Retirement System (System)[1] as part of the divorce decree's property division, the trial court had authority to issue the 1999 QDRO so long as it conformed to the formula spelled out in the decree for dividing the benefit. This is so notwithstanding that two prior QDROs had been issued, which either failed to conform to the divorce decree's property division formula and/or were rejected by the System as insufficient or inadequate to allow payment to former wife what she was owed under the decree's formula. Although a trial court is without jurisdiction or authority to issue a QDRO that substantively alters a final property division previously made in a divorce action, a trial court has jurisdiction or authority to issue a subsequent post-property division QDRO to act as the statutorily-sanctioned mechanism by which the System gains lawful empowerment to pay a former spouse their portion of a System benefit previously awarded as part of the final property division in the divorce action. We also hold the Court of Civil Appeals (COCA) erred by ruling, in a 2–1 decision, that the trial court acted outside its jurisdiction or authority. Finally, we deny both appellee's June 27, 2000 counter-motion to award counsel fees on appeal and appellant's June 27, 2000 motion for award of costs on appeal.

## PART I. STANDARD OF REVIEW.

¶ 2 This case necessitates decision as to whether the trial court had jurisdiction or authority to issue the 1999 QDRO or,

Barry K. Roberts, Norman, OK, for Plaintiff/Appellants.

---

1. Oklahoma Firefighters Pension and Retirement System (System), 11 O.S.1991, § 49–100.1 et seq., as amended.

instead, whether its issuance was an extra-jurisdictional modification of a final property division in a divorce action. In that a question concerning the jurisdictional power of the trial court to act as it did is implicated our standard of review is *de novo*. *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 8, 33 P.3d 302, 305; *Stidham v. Special Indemnity Fund*, 2000 OK 33, ¶ 10, 10 P.3d 880, 885. Questions of law are also reviewed *de novo*, which involves a plenary, independent and non-deferential examination of a trial court's legal rulings. *Samman*, at ¶ 8, 33 P.3d at 305. We also note: a trial court has wide discretion in the division of marital property and the decision dividing such property will not be disturbed on appeal unless contrary to law, against the clear weight of the evidence, or an abuse of discretion is shown. *Randol v. Randol*, 1993 OK CIV APP 41, 849 P.2d 1118, 1121; *see also Carpenter v. Carpenter*, 1983 OK 2, 657 P.2d 646, 651; *Peters v. Peters*, 1975 OK 114, 539 P.2d 26, 27.

## PART II. FACTUAL BACKGROUND, PROCEDURAL HISTORY AND LEGAL ANALYSIS.

### PART II(A).

¶ 3 Appellant and appellee were married on or about June 5,1983. At such time, and for about ten (10) years prior thereto, appellant was a firefighter with the City of Oklahoma City. In April 1992 appellant initiated a divorce action. He was then still employed as a firefighter, as he was when the parties were divorced by decree filed on October 22, 1992. As part of the decree's property division, appellee was awarded a portion of appellant's vested interest in the System. The decree **expressly found** former husband had a vested interest in the System; part of the interest was his separate property (obviously any interest in the System earned while **not** married to appellee) and part was marital property (just as obviously any interest earned in the System while the parties **were** married). On page one of his February 18, 2000 brief in chief filed in this appeal former husband admits (1) the divorce decree awarded former wife a share of his retirement income under the System; (2) no appeal was lodged from the decree; and (3) the decree became final. Also, he does not question the trial court's initial authority to award a portion of his future retirement income to appellee as part of the divorce decree's property division.[2]

¶ 4 The decree contained the following concerning the division of the retirement income:[3]

---

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that [former husband] is awarded a portion of his retirement compensation plan with the City of Oklahoma City and [former wife] is awarded a portion of same, as follows:

$$\frac{1}{2} \times \frac{115}{[\text{appellant's] total months of employment}} \times \text{Dollars paid to [appellant], less [appellee's] pro-rata share of any State and Federal taxes[,]}$$

pursuant to the Qualified Domestic[ ] Relations Order which is attached hereto and marked as Exhibit "A["].

---

In that 115 months was approximately the number of months of the marriage, the above formula appears intended to grant appellee about one-half (½), i.e. fifty percent (50%), of the future anticipated benefit or, in the language of the decree, of the "retirement compensation plan", **earned during the marriage.**[4] In other words, the first part of

2. At page one of his September 5, 2000 answer to petition for certiorari appellant also admits "[a]ll property was divided by the original decree of divorce...."

3. As the text notes, the trial court also **expressly found** in the decree that part of former husband's interest in the System was his separate property and part was marital property.

4. The date in the divorce decree for when the parties married (June 5,1983) coupled with the decree's filing date (October 22,1992), shows the

the formula embodies the multiplication of two fractions. One is one-half (½) or fifty percent (50%). The other fraction has a numerator of one hundred (115) months (the approximate number of months of the parties' marriage) and a denominator representing appellant's total months of employment as a firefighter. The result of the multiplication of these two fractions (which can be expressed in percentage terms) is then multiplied by the total actual dollar benefit eventually to be paid to appellant by the System upon his retirement, which yields the actual share or amount of the System benefit to be paid to appellee.

¶5 In that appellant was still employed as a firefighter when the decree was issued and filed, the denominator of the second fraction was not then known. The longer he worked as a firefighter results in the denominator of the second fraction to be continually increasing, which concomitantly results in a **decrease** in the percentage appellee is entitled to under the divorce decree's formula. However, her share of the eventual retirement income from the System **always** remains approximately one-half (½)—or fifty percent (50%)—of the benefit **earned during the marriage.**

¶6 Even though the decree states a QDRO is attached to it as Exhibit A, in actuality no QDRO was attached. Not until July 1993 was a QDRO entered in the case.[5] In setting out appellee's share of any System benefit, the 1993 QDRO states in pertinent part: "[t]he then current values as of the date of withdrawal of September 28, 1992:[t]wenty-four percent (24%) of the accumulation under Oklahoma Firefighters Pension and Retirement System." Appellant concedes or ad-

mits at page three of his February 18, 2000 brief that the meaning of the quoted language is confusing, but asserts the apparent intent was to award appellee some share of what had accumulated in the pension plan during the marriage. We also note, the September 28th date appears to reference the perceived date of the divorce (the 1993 QDRO stating the decree was dated September 28th).[6] Prior to the COCA's decision in this case former husband, in his appellate submissions, relied on the 1993 QDRO as the order dividing the marital interest in the pension plan, although he never takes a firm stance as to its meaning, even though, as noted, he acknowledges its apparent intent is to award appellee a share of what had accumulated in the pension plan during the marriage. The 1993 QDRO was not appealed by either party.

¶7 Also in 1993, although appellant became eligible to retire and receive a pension benefit with, at least, twenty (20) years of service as a firefighter, he did not retire, but continued to work as a firefighter. Instead of retiring he elected to participate in a program known as the Oklahoma Firefighters Deferred Option Plan 11 O.S.Supp.1993, § 49–106.1, which allowed him to continue working for an additional five (5) years, while at the same time having what would have been his monthly retirement benefit, had he elected to cease employment and retire, paid into a deferred option account—the account drawing interest and eventually being paid to him in a lump sum or as an annuity upon his actual retirement. § 49–106.1.[7] At page three of his February 18, 2000 brief appellant admits the pension benefits he would have re-

parties were actually married a couple of weeks shy of one hundred thirteen (113) months, rather than one hundred fifteen (115) months. Assuming an oral pronouncement of divorce was made by the trial court in late September 1992 (see note 6, *infra*) the length of the parties' marriage would be about one week short of one hundred twelve (112) months.

**5.** The July 1993 Qualified Domestic Relations Order (QDRO) was filed in the trial court in August 1993.

**6.** As we view the record (which includes the district court docket sheet) the September 28,

1992 date may be the date an oral pronouncement was made in the trial court. The hearing on the divorce was held on September 23rd and 24th; a court minute appears on the docket sheet on September 29th referring to the merits hearing in the divorce; and, as noted in the text, the divorce decree was filed in the case on October 22nd.

**7.** 11 O.S.Supp.1993, § 49–106.1 was amended in 1997 as to what happens should a firefighter die with an account balance in the deferred option plan. 1997 Okla. Sess. Laws (West), Ch. 247, § 1.

ceived had he retired in 1993 were the funds paid into the deferred option plan account.[8]

¶ 8 In December 1996 a second QDRO issued at a time former husband still worked as a firefighter—i.e. he was not actually receiving any benefits from the System, although (as noted) the retirement benefit he would have received had he retired in 1993 was being paid into the deferred option account. The 1996 QDRO contained language at odds with both the formula specified in the divorce decree and the 1993 QDRO. It provides former wife is "entitled to a monthly benefit from the Plan equal to twenty-four percent (24%) of [former husband's] vested benefit in the Plan, accrued during the period beginning the 5th day of June, 1983, and ending the 28th day of September, 1992, determined as if [former husband] separated from employment on that date with a vested benefit under the Plan . . . ." Rather than giving appellee one-half ($\frac{1}{2}$) or fifty percent (50%) of the benefit corresponding to the approximate length of the marriage, the 1996 QDRO seems to award her only twenty-four percent (24%) of the benefit earned during the marriage. The 1996 QDRO was not appealed by either party. Neither the 1993 or 1996 QDRO required the System to pay appellee anything, unless and until appellant began receiving a benefit or some payment from the System.

¶ 9 Appellant concedes or admits at page two of his September 5, 2000 answer to petition for certiorari that both the 1993 QDRO and the 1996 QDRO were rejected by the

System as inadequate; that the 1996 QDRO used a different formula than reflected in the 1993 QDRO; and, in essence, using the 1996 QDRO would result in appellee receiving a lesser amount of any System benefit than she would have been entitled to under the 1993 QDRO. Further, appellant fails to take a position in any of the materials submitted on appeal as to whether the 1993, 1996 or 1999 QDROs conform to the formula spelled out in the divorce decree, although, as above noted, he admits the formula in the decree was intended to award former wife some share of his retirement income from the System.

¶ 10 In April 1999 **appellant** moved to modify the 1996 QDRO, essentially arguing appellee was entitled to nothing from the System because, instead of retiring, he recently either had or, was about to be granted, a disability pension which he claimed was solely his separate property. Appellee counter-moved to amend the 1996 QDRO asserting it did not conform to the decree's formula. She asserted that using the divorce decree formula entitled her to nineteen percent (19%) of the benefit appellant was then, apparently, entitled to receive from the System. The nineteen percent (19%) is arrived at as follows: 115 ÷ 305 (appellant's total months of employment) = 0.3770491, which when multiplied by $\frac{1}{2}$ or .50 = 0.1885245, which rounds to 0.19 or nineteen percent (19%).[9]

¶ 11 The trial court denied appellant's motion; granted appellee's counter-motion; and

---

**8.** Former husband makes contradictory statements at pp. 20–21 of his February 18, 2000 brief in chief to statements made earlier in the brief as to the source of the funds paid into the deferred option plan account. At pp. 20–21 he, in essence, states the trial court did not know where the money in the account came from because no party was permitted to offer evidence in the trial court. We do not understand the contradictory statements. As former husband seems to realize at page three of the brief, 11 O.S.Supp.1993, § 49–106.1 itself sets out where the money in the deferred option plan account came from. Subsection(D) thereof provides in pertinent part: "[t]he monthly retirement benefits that would have been payable had the member elected to cease employment and receive a service retirement shall be paid into the Oklahoma Firefighters Deferred Option Plan account." Subsection (D) also makes clear that a firefighter's municipal employer provides a certain contribution to

the account. We also note subsection (C) of § 49–106.1 limits the duration of participation in the deferred option plan for active firefighters to five years and further states: "[a]t the conclusion of a member's participation in the Oklahoma Firefighters Deferred Option Plan, the member shall terminate employment with all participating municipalities as a fire fighter, and shall start receiving the member's accrued monthly retirement benefit from the System."

**9.** The completed formula can be mathematically stated:

$\frac{1}{2}$ × 115/305 =
$\frac{1}{2}$ × 38% = 19%.

Of course, under the divorce decree's language any dollars paid to appellee would be less or minus her pro rata share of applicable federal and state taxes.

issued a third QDRO (the 1999 QDRO). The trial court's written ruling said the following concerning the System benefit(s): "[a]fter consideration of the pleadings and argument of counsel, I find that the Decree of Divorce entered into October 22, 1992, was not appealed and is a final order, the Decree made an equitable division of property, that division cannot later be altered by subsequent motion and the Decree controls the division of marital property." The 1999 QDRO accepts appellee's view that the divorce decree formula entitles her to nineteen percent (19%) of the System benefit.[10]

¶ 12 Appellant appealed and the COCA, Div. I, affirmed in part, reversed in part and remanded. Although the COCA ruled appellee **was** entitled to part of the System benefit, it decided she was not entitled to the amount the trial court determined was due under the 1999 QDRO.[11] Instead,

the COCA ruled she was only entitled to a lesser amount as specified in the 1996 QDRO. The COCA's majority characterized the formula contained in the divorce decree as awarding former wife, "twenty-four percent of the pension for the months the [parties] were married[,]" i.e. what seems called for by the 1996 QDRO. The dissenting COCA judge believed the 1999 QDRO did not modify the divorce decree's formula-driven recitation, but conformed to it. He also, in essence, opined that the 1999 QDRO was a proper exercise of the trial court's authority in aid of attempting to enforce the decree's property division concerning appellee's share of appellant's pension benefit from the System—an aid which would allow the firefighter's pension board the authorization to pay her what had been awarded by the divorce decree. Appellee sought certiorari which we previously granted.[12]

10. The 1999 QDRO uses three hundred five (305) months as the total number of months appellant was employed as a firefighter. Both parties, in one or more of their appellate submissions, seem to indicate former husband actually had about three hundred ten (310) months of service as a firefighter and that he actually retired on or about March 1, 1999, although former husband in Exhibit B, Summary of the Case, filed with his July 20, 1999 Petition in Error, does state: "[h]e was forced to retire at the end of September 1998[.]" Whether former husband worked as a firefighter for three hundred five (305) months or three hundred ten (310) months, plugging either figure into the divorce decree's formula as denominator in the second fraction yields nineteen percent (19%). Using the former results in the figure 0.1885245, which rounds to 0.19 or nineteen percent (19%). Using the latter results in the figure 0.1854838, which also rounds to 0.19. Finally, although former husband states at page five of his February 18, 2000 brief in chief he retired with twenty-five (25) years, ten (10) months and twenty-two (22) days of service with the Oklahoma City Fire Department, which arguably is three hundred eleven (311) total months of employment, and using said number as denominator in the second fraction in the divorce decree formula results in a figure of 0.1848874, which arguably rounds to 0.18 or eighteen percent (18%), nothing in the record we have been provided on appeal actually shows he had three hundred eleven (311) total months of employment as a firefighter.

11. The majority opinion of the Court of Civil Appeals (COCA) also seems of the view that the 1993 QDRO was subject to modification because the final sentence in it provided: "[t]his Court reserves jurisdiction to issue further orders as needed to execute this order." We read nothing in the 1993 QDRO, including said sentence, as reserving jurisdiction by the trial court to modify the formula-driven recitation in the divorce decree or to change/alter the final property division that was made by that decree about nine months earlier. Further, reserving jurisdiction to issue further orders to execute an order, i.e. issuing subsequent orders to aid in carrying out or enforcing the order's terms, is not a grant of authority to substantively alter the order's provisions.

12. As we read the opinion of the COCA, it expressly ruled against appellant on three of his appellate issues: (1) whether former wife was entitled to a share of the funds in the deferred option plan account; (2) whether she was entitled to anything, based on his assertion he was receiving a disability pension (rather than a retirement pension) claimed to be solely his separate property; and (3) that the 1996 QDRO was allegedly issued without notice to him. He failed to re-tender these issues on certiorari and, therefore, questions concerning them are not before us in this certiorari review. Generally, this Court will not review issues decided by the COCA adversely to a party that are not re-tendered for review on certiorari. *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438, 445–446; *Kerley v. Uniroyal Goodrich Tire Co.*, 2000 OK 62, 10 P.3d 230, 231–232; Okla. Sup.Ct. Rule 1.180, 12 O.S.Supp.1997, Ch. 15, App. 1. We also note, we need not and do not decide three issues former husband seemingly raised on appeal because review of the record presented to us on appeal fails to reveal he raised the issues in the trial court. They are: (1) his assertion the trial court erred by ruling without receiving any evidence; (2)

## PART II(B).

¶13 Absent a specific statutory exception a trial court may consider pension benefits accumulated during the marriage as jointly acquired property subject to equitable division in a divorce. *Rice v. Rice*, 1988 OK 83, 762 P.2d 925, 926. Further, this Court has consistently held that a final property division judgment is not subject to modification at a later date. *In re Key*, 1996 OK 130, 930 P.2d 824, 825–826; *Clifton v. Clifton*, 1990 OK 88, 801 P.2d 693, 695 (in absence of fraud, a property settlement award, as opposed to an award for support alimony, cannot be modified in a post-decretal hearing); *see also Ozment v. Ozment*, 2000 OK CIV APP 52, ¶6, 11 P.3d 635, 637 (COCA, Div.3)(recognizing that pursuant to 43 O.S.Supp.1997, § 134(A), "[p]ayments pertaining to a division of property are irrevocable and not subject to subsequent modification by the court making the award.").[13]

¶14 Here, appellant admits the divorce decree awarded former wife a share of his retirement income under the System; that no appeal was lodged from the decree; and the decree became final. The decree **expressly found** that part of appellant's vested interest in the System was his separate property and part marital property. Rather than specifying a particular amount or percentage of appellant's anticipated future retirement benefit, the decree set out a formula for use in calculating former wife's share of the benefit. In that appellant does not dispute (as noted, he admits) that the decree awarded appellee part of his retirement income, and he also concedes or admits that the System rejected both the 1993 and 1996 QDROs as inadequate, the crux of this case is whether the trial court had authority to interpret the meaning of the formula contained in the decree and to issue the 1999 QDRO, after two previous QDRO's, in an effort to have an order acceptable to the System so that it would be empowered to pay appellee what she was awarded by the decree.

¶15 Although this Court has never had the opportunity to specifically decide the issue, on more than one occasion Court of Civil Appeals' opinions have recognized that a QDRO is generally the mechanism by which a divorce decree awarding retirement benefits to a spouse is enforced and collected with regard to the particular retirement program covered by the decree. *Troxell v. Troxell*, 2001 OK CIV APP 96, ¶5, 28 P.3d 1169, 1171; *Taylor v. Taylor*, 2001 OK CIV APP 16, ¶13, 19 P.3d 895, 898; *Ozment v. Ozment, supra*, 2000 OK CIV APP 52, at ¶10, 11 P.3d at 638. *Ozment* further ruled that a trial court has the authority to issue a subsequent QDRO if an initial one contains some ambiguity concerning the proper division of a retirement benefit under an earlier entered divorce decree, as long as the later QDRO does not alter what was awarded initially by the decree, but conforms to it.[14]

that former wife was required to appeal System decision(s) (presumably made by appropriate administrative officials) that the 1993 and 1996 QDROs were ineffective or inadequate; and (3) a limitation issue, to the extent it is raised separately from the jurisdictional/authorization issue we decide today. Generally, this Court does not reach issues the appealing party fails to raise in the trial court. *Bottles v. State ex rel., Oklahoma State Board of Medical Licensure and Supervision*, 1996 OK 59, 917 P.2d 471, 472. Although there are exceptions to the general rule, we deem none applicable. Further, the party assigning error on appeal bears the burden of presenting the appellate court with a record on appeal in support of the assignments of error. *Bailey v. Bailey*, 1994 OK 6, 867 P.2d 1267, 1272. Legal error may not be presumed in an appellate court from a silent record. *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496, 497. The meager record we have been provided in this appeal fails to adequately support reversible error in regard to any of these latter three issues.

13. An exception to the general rule has been recognized where the parties enter into a settlement agreement (approved by a consent divorce decree) that expressly agrees to future modification of the agreed-to property division under certain specified circumstances. *Greer v. Greer*, 1991 OK 26, 807 P.2d 791(involved division of military retirement benefits). Neither fraud nor such an agreement is involved in this case.

14. In regard to the System, 11 O.S.Supp.1993, § 49–126(B)(2)(in effect when the 1993 QDRO was entered in the trial court) defined a QDRO as follows:

the term "qualified domestic order" means an order issued by a district court of this state pursuant to the domestic relation laws of the

¶ 16 Recitals in a journal entry of judgment are taken as true and correct and are *prima facie* proof of the facts stated therein where not impeached or contradicted by the record. *Haskett v. Turner*, 1955 OK 329, 290 P.2d 133 *First Syllabus by the Court*. Furthermore, where a journal entry of judgment contains the words, "It is by the court ordered, adjudged and decreed," the order following these words is the final and controlling portion of the judgment of the trial court, and, where the same is clear and unambiguous, this Court will give effect to the order, judgment and decree therein rendered. *Imo Oil & Gas Co. v. Charles E. Knox Oil Co.*, 1926 OK 842, 250 P. 117 *Syllabus by the Court*. In our view, the formula-driven recitation in the decree for awarding appellee a portion of the marital interest in appellant's future benefit in the System is clear and unambiguous and the 1999 QDRO conforms to the formula there spelled out. Filling in the appropriate total months of employment of appellant as a firefighter to the formula gives former wife nineteen percent (19%) of the pension, which, again, is about one-half (½) or fifty percent (50%) of the benefit earned during the marriage. Nothing has been presented that such amount is inequitable, an abuse of discretion or contrary to applicable law.

¶ 17 Furthermore, the COCA majority plainly erred in viewing the divorce decree formula as granting appellee only twenty-four percent (24%) of the System benefit for the months the couple were married, i.e. the percentage delineated in the 1996 QDRO. Such a view is plainly erroneous because, if the one hundred fifteen (115) months is properly understood as the approximate months of marriage, which, as the formula sets out, is divided by its denominator (i.e. appellant's total months of employment), this figure is **always** multiplied by one-half (½) or fifty percent (50%) under the formula. In other words, this will always give former wife about one-half (½) or fifty percent (50%) of the pension earned during the marriage, even though her percentage of the entire pension **decreased** the longer former husband worked as a firefighter after the marriage because the total months of employment **increased** until former husband finally retired, thus making the second figure or fraction of the divorce decree's formula **smaller**. In that the 1996 QDRO is patently inconsistent with the formula spelled out in the divorce decree it cannot act as the division of the marital interest in the System benefit because to give it force would plainly be allowing an alteration/change/modification of the property division concerning the System benefit spelled out in the final divorce decree.[15]

¶ 18 Even if it is assumed there is some ambiguity in the divorce decree formula, we believe the trial court correctly

State of Oklahoma which relates to the provision of marital property rights to a spouse or former spouse of a member and which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to receive a portion of the benefits payable with respect to a member of the System.

11 O.S.Supp.1993, § 49–126 was the subject of amendments in 1998, 1999 and 2000. 1998 Okla. Sess. Laws (West), Ch. 198, § 2; 1999 Okla. Sess. Laws (West), Ch. 193, § 5; 2000 Okla. Sess. Laws (West), Ch. 327, § 13. None of the amendments bear on our disposition in the present matter.

15. In our view, the 1993 QDRO contains an unclear recitation of former wife's entitlement and it also is inconsistent with the formula set out in the divorce decree. We do agree with appellant that the language of this QDRO is confusing and, again, it is really not at all clear what was intended to be awarded by it. However, one interpretation is that former wife would be entitled to twenty-four percent (24%) of what had been earned in the System up to the date of the divorce, which would actually give former wife more than she requested in the trial court via the 1999 QDRO argued by her to be in conformance with the divorce decree formula. Further, the 1993 QDRO talks about "current values as of the date of withdrawal of" late September 1992. Although we are not exactly sure what the quoted language means, nowhere does the divorce decree limit former wife to the "current value" of any benefit former husband would receive as if he then withdrew from the System or then retired (which, of course, he did not). In fact, a fair reading of the decree's formula, by spelling out that former wife is entitled to a fraction (i.e. a percentage) of the "[d]ollars paid to [appellant], less [appellee's] pro rata share of any State and Federal taxes[,]" seems to reasonably point to the conclusion that former wife was to be entitled to just what the formula provided, a percentage of her former husband's retirement pension when he began to collect one.

resolved the ambiguity in his 1999 QDRO.[16] Once a ruling has become final (either for want of an appeal or in consequence of an appellate court's decision), any controversy over the meaning and effect of the decision must be resolved by resort solely to the face of the judgment roll. *Fent v. Oklahoma Natural Gas Co., a Div. of Oneok, Inc.,* 1994 OK 108, 898 P.2d 126, 132. Furthermore, mere ambiguity will not affect a judgment's validity, unless none of its terms is susceptible to construction which will make it conformable to law. *Mayhue v. Mayhue,* 1985 OK 68, 706 P.2d 890, 893. Also, merely entering a second judgment cannot, *per se,* vacate a prior judgment in the same action. *Aishman v. Taylor,* 1973 OK 130, 516 P.2d 244, 245. An unclear judgment should be construed so as to carry out its evident purport and intent, rather than defeat it, and a court should consider the situation to which it was applied and the purpose sought to be accomplished. *Hicks v. Hicks,* 1966 OK 91, 417 P.2d 830, 832–833.

¶ 19 This is not the first time this Court has confronted the issue of whether a trial court's action involved a modification of an earlier judgment or merely involved the trial court's construction of what was deemed an unclear judgment or part thereof. *Hicks, supra.* The purpose and function of a court in construing a divorce decree earlier entered is to give effect to that which is already in the judgment, although expressed ambiguously, and the court has no authority to add new provisions to the decree or to change substantive provisions already in the decree, under the guise of construing said decree. *Titsworth v. Titsworth,* 1952 OK 184, 244 P.2d 295 *First and Second Syllabi by the Court.* Here, a reasonable construction (assuming ambiguity) of the formula set out in the decree is exactly that meaning given by the trial court in the 1999 QDRO, to wit: nineteen percent (19%) of the System benefit, which, as noted is about one-half (½) or fifty percent (50%) of the benefit earned during the marriage.[17]

16. Only if a judgment is ambiguous on the face of the record may a court construe it. *Dickason v. Dickason,* 1980 OK 24, 607 P.2d 674, 677.

17. Assuming ambiguity in the formula recited in the divorce decree, we have no hesitation in agreeing with the trial court's construction of it, as reflected in the 1999 QDRO. If the denominator reflecting appellant's total months of employment was intended to represent appellant's total months of employment at the time of the divorce decree or at the time he would reach a normal retirement date with twenty (20) years of service as firefighter—**i.e. something other than his total months of employment at the time he retired and began receiving a benefit from the System**—it would have been an easy task to fill in one of the two former numbers of months and come up with a percentage for appellee's interest in appellant's eventual benefit from the System. If the total months of employment contained in the formula as denominator was intended to represent the months of employment appellant had as a firefighter up to the time of the divorce, there would have been no reason to leave this number out of the formula because it would have been known (approximately 233 months). If, instead, the total months of employment was intended to be the number of months appellant would have as a firefighter when he became eligible to retire with a normal retirement benefit under the System, there was also no reason to leave the actual number out of the decree's formula because the statutory scheme itself provides that a firefighter reaches normal retirement when he/she has twenty (20) years of service as a firefighter (i.e.

240 months). 11 O.S.1991, § 49-100.1(7). The only reasonable construction of the phrase "total months of employment" is that it meant appellant's total months of employment as a firefighter at the time he retired and began to receive a benefit from the System. Therefore, the trial court's 1999 QDRO can only be deemed an order which conformed to the formula contained in the divorce decree, not an order that altered, changed or added new provisions to the divorce decree. Accordingly, the 1999 QDRO was within the trial court's authority to enter and the COCA erred in ruling otherwise. Title 11 O.S.1991, § 49-100.1(7) was amended in 1994 by the Legislature in a way not material to our disposition. 1994 Okla. Sess. Laws (West), Ch. 300, § 1. Furthermore, former husband is in no position to complain that a **greater** number was used as denominator-i.e. three hundred five (305) months-which gives former wife nineteen percent (19%) of the System benefit. Using two hundred thirty-three (233) months would entitle appellee to twenty-five percent (25%) of the benefit [115 ÷ 233 = 0.4935622, which when multiplied by ½ or .50 = 0.2467811, which rounds to 0.25 or twenty-five percent (25%)]. Using two hundred forty (240) months would entitle her to twenty-four percent (24%) [115 ÷ 240 = 0.4791666, which when multiplied by ½ or .50 = 0.2395833, which rounds to 0.24 or twenty-four percent (24%)]. An appellant cannot complain of an error which, if corrected, would result in a greater liability to the appellant. *Cameron & Henderson v. Franks,* 1947 OK 232, 184 P.2d 965, 971.

**PART II(C).**

¶ 20 After the COCA rendered its opinion in this matter both parties moved for appeal-related attorney fees. Further, on June 27, 2000 appellant filed a motion for award of costs on appeal. By an order filed on August 4, 2000 the COCA denied appellant's motion for appeal-related attorney fees. However, no ruling was made in regard to appellee's June 27, 2000 counter-motion to award counsel fees on appeal or as to appellant's June 27, 2000 motion for award of costs on appeal. We now rule on these still-pending motions. Okla. Sup.Ct. Rule 1.184, 12 O.S.Supp.1997, Ch.15, App. 1.

¶ 21 The decision as to whether to award attorney fees in a divorce action or related proceeding is within the discretion of the court and their award involves judicial balancing of the equities. 43 O.S.Supp.1997, § 110(C) and (D); *Barnett v. Barnett,* 1996 OK 60, 917 P.2d 473, 477–478. Based upon our review of the record, the appellate submissions of the parties and giving due consideration to the ultimate disposition of this appeal, we are convinced each party should bear the expense of his or her own appeal-related attorney fees and that appellee's June 27, 2000 counter-motion to award counsel fees on appeal should be denied.

¶ 22 Title 12 O.S.1991, § 978 provides:

When a judgment or final order is reversed, the plaintiff in error shall recover his costs, including the costs of the transcript of the proceedings, or case-made, filed with the petition in error; and when reversed in part and affirmed in part, costs shall be equally divided between the parties.

The ultimate outcome of this appeal is: the trial court's denial of former husband/appellant's motion to modify the 1996 QDRO stands affirmed (COCA's disposition left unchallenged on certiorari by appellant); the trial court's grant of former wife/appellee's counter-motion to amend the 1996 QDRO stands affirmed; and the 1999 QDRO stands affirmed. In that all of the trial court's rulings challenged on appeal by appellant have been affirmed he is not entitled to recover any of his costs associated with this appeal from appellee.

**PART III.  SUMMARY.**

¶ 23 Former wife was awarded as part of the divorce decree's property division a formula-driven share of former husband's anticipated future retirement benefit from the Oklahoma Firefighters Pension and Retirement System (System) which equaled approximately one-half (½) or fifty percent (50%) of the benefit earned during the marriage. The COCA's majority erred in ruling that the trial court acted outside its jurisdiction or authority when it issued the 1999 QDRO; in essentially ruling that the divorce decree formula awarded former wife only twenty-four percent (24%) of the System benefit earned during the marriage; and in concluding the 1996 QDRO controlled division of the benefit. Instead, the trial court had authority to issue the 1999 QDRO so long as it conformed to the formula spelled out in the decree for dividing the benefit, which it did. The trial court had such authority even though two prior QDROs had been issued, which either failed to conform to the decree's property division formula and/or were rejected by the System as insufficient or inadequate to allow payment to former wife what she was owed under the formula. Although a trial court is without jurisdiction or authority to issue a QDRO that substantively alters a final property division previously made in a divorce action, a trial court has jurisdiction or authority to issue a subsequent post-property division QDRO to act as the statutorily-sanctioned mechanism by which the System gains lawful empowerment to pay a former spouse their portion of a System benefit previously awarded as part of the final property division in the divorce action.

¶ 24 The opinion of the Court of Civil Appeals is **VACATED IN PART** and the judgment of the trial court is **AFFIRMED.** Appellee's June 27, 2000 counter-motion to award counsel fees on appeal is **DENIED.** Appellant's June 27, 2000 motion for award of costs on appeal is **DENIED.**

¶ 25 HARGRAVE, C.J., WATT, V.C.J., HODGES, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 26 OPALA, J., concurs in judgment.