IN RE THE MARRIAGE OF GREEN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE MARRIAGE OF GREEN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE MARRIAGE OF GREEN
2020 OK CIV APP 12
Case Number: 117451
Decided: 02/12/2020
Mandate Issued: 03/11/2020
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2020 OK CIV APP 12, __ P.3d __

 

IN RE THE MARRIAGE OF:

RICHARD L. GREEN, Plaintiff/Appellant,
v.
JANICE GREEN, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE STEPHEN BONNER, TRIAL JUDGE

AFFIRMED

Christopher L. Kannady, Terry M. McKeever, FOSHEE & YAFFE, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Virginia Henson, PHM LAW GROUP, P.C., Norman, Oklahoma, for Defendant/Appellee

JANE P. WISEMAN, CHIEF JUDGE:

¶1 Husband Richard L. Green appeals the trial court's order denying his motion for a military pension division order. After review, we affirm the trial court's decision.

FACTS AND PROCEDURAL BACKGROUND

¶2 On January 29, 1996, Husband and Wife Janice C. Green entered into an agreed divorce decree which, among other things, granted her one-half of Husband's military retirement. An agreed "order dividing military retired pay" was entered the same day stating in relevant part:

b. The Court FINDS that the parties have jointly agreed that [Wife] is entitled to her marital interest in the [Husband's] United States Navy Retirement which should be equitably divided. [Husband] served approximately 23 years and 5 months.

c. The parties hereto were legally married on the 27th day of July, 1970 and legally divorced on January 29, 1996; accordingly, this was a marriage in excess of 20 years duration wherein [Husband] served 19 years of creditable service while married.

d. The parties agree that the Court approves said agreement whereby [Wife] is awarded one-half of [Husband's] retired pay attributable to [his] military service as her sole and separate property, as hereinafter set forth, and [Husband] hereby is divested of all right, title and interest in and to [Wife's] portion of the military retired pay to be calculated as follows: One-half of [Husband's] retirement pay.

The trial court further found that the order "shall be deemed to be a 'Qualified Domestic Relations Order' pursuant to the Uniformed Services Former Spouses' Act, P.L. 97-252, 10 U.S.C. §1408." Because Husband had retired before the divorce, Wife was entitled to begin receiving monthly distributions immediately. The order also states that the monthly amount would be increased "each time [Husband] receive[d] any adjustment to his retired pay" and that the "share shall be 50% of the increase in [Husband's] payments." The order further says that if "[Wife] does not receive the amount she is entitled to receive under the Order, [Husband] shall pay directly to [Wife] the amount [she] is entitled to receive if [Husband] receives [her] portion."

¶3 The United States Department of Veterans Affairs determined Husband was 100% disabled and awarded him disability pay effective June 1, 2001, more than five years after the divorce. Because a service member at that time had to waive retirement in order to receive disability, Wife stopped receiving her share of Husband's retirement from the military's Defense Finance and Accounting Service (DFAS) and Husband received only disability payments from the VA.

¶4 However, Congress passed legislation effective January 1, 2004, allowing particular classes of eligible retirees to receive both retired and disability pay which is known as Concurrent Retirement and Disability Pay (CRDP), 10 U.S.C.A. § 1414. Thereafter, Husband began receiving his military retirement and VA disability payments. However, when the military retirement payments resumed, Wife did not receive her portion of those benefits pursuant to the divorce decree. In a letter dated September 6, 2013, DFAS notified Husband that it received an application from Wife for payment from his retirement pay. In a letter dated October 25, 2016, DFAS notified Husband that an audit of his CRDP account shows it was "in an overpaid status in the amount of $91,538.00 for the time period of January 1, 2004 through August 31, 2013." The letter further advised that the "overpayment was caused by an underpayment to [his] former spouse due to time periods that Former Spouse deductions were not made from [his] monthly retired pay" and the amount was calculated to include "all CRSC[1] and CRDP retroactive payments that may have been due to [his] account."

¶5 On July 10, 2018, Husband filed a motion for military pension division order stating that "[n]o military pension division order was entered at the time of the Divorce Decree." Wife responded stating the trial court entered a military pension division order which was referred to and attached to the 1996 divorce decree. She filed a motion to dismiss Husband's motion as moot with a copy of the military pension division order attached to her motion, arguing DFAS "has been provided with this order, has approved it, and is currently paying [Wife] her share of [Husband's] disposable retirement pay." Husband filed a reply contending his disability pay is "not subject to property division" and asked the trial court to "render the disability benefits in question not subject to the divorce decree granted in 1996, and as such deny [Wife's] entitlement to them, during the time that [Husband] was not receiving retirement pay." He further asked the trial court to enter "a new military pension division order that complies with current law."

¶6 Wife then filed a brief arguing the trial court should deny Husband's request for a new military order explaining:

Congress passed the Uniformed Services Former Spouse Protection Act (USFSPA), 10 U.S.C. §1408 et seq., allowing state courts to divide the retirement. Thereafter, the U.S. Supreme Court decided Mansell v. Mansell, 490 U.S. 581 (1989). The issue in the Mansell case was whether, after a state court ruling granting a former spouse a share of military retirement benefits, a [service member] could waive those benefits to receive disability payments. At that time, to receive disability, a [service member] had to waive any disposable retired pay in the same amount as the disability. The Mansell court ruled that 10 U.S.C. §1408(c)(1) preempts states from dividing the value of the waived military retirement pay because it is not "disposable retired pay" as defined by the statute.

After the Mansell ruling, state courts began to insert language in divorce decrees that required the [service member] who waived retirement pay, to reimburse directly the affected former spouse, and other similar orders designed to restore the benefit.

In 2003, Congress began taking steps to modify the VA waiver requirement. In that year, legislation was passed taking effect January 1, 2004, to allow concurrent receipt of both forms of payment--retired pay and disability payments--for certain classes of eligible retirees. This is known as the Concurrent Retirement and Disability Pay (CRDP) and is found at 10 U.S.C. §1414. The law provided for a ten-year phased elimination of the disability offset and the veteran's retirement pay increased gradually until the phase in period which ended in 2014. This is likely what prompted the letter from DFAS to the Defendant that she was once again eligible for retirement pay.

Wife further states that "it appears that DFAS is telling [Husband] that he has been receiving during the phase-in retirement benefits that include the portion awarded to [Wife]." Wife argues the issue is therefore "whether [Husband] is required to return to [Wife] retirement benefits he has received during the phase in period under CRDP that rightfully belong to her." Wife contends the trial court cannot reverse the divorce consent decree awarding her half of Husband's retirement benefits because the order is res judicata. The trial court, according to Wife, can only enforce its previously entered order and "has no jurisdiction to order DFAS to create a different result."

¶7 At a hearing where the parties presented arguments on the issues, the trial court concluded that "[a] military order has been entered in the case" and "[t]his Court has no jurisdiction to change the order." The trial court denied Husband's motion for a new military pension division order.

¶8 Husband appeals.

STANDARD OF REVIEW

¶9 Husband urges that "[t]his case necessitates [a] decision as to whether the trial court had jurisdiction or authority to issue a new QDRO, or enter an order clarifying the 1996 QDRO." So we must determine whether the trial court properly denied Husband's "motion for military pension division order" because it had "no jurisdiction to change the order" already in existence. "[A] question concerning the jurisdictional power of the trial court to act as it did" triggers a de novo standard of review. Jackson v. Jackson, 2002 OK 25, ¶ 2, 45 P.3d 418. "Questions of law are also reviewed de novo, which involves a plenary, independent and non-deferential examination of a trial court's legal rulings." Id.

ANALYSIS

¶10 The issue before us is whether the trial court properly denied Husband's "motion for military pension division order" because it had "no jurisdiction to change the order" already in existence. Husband argues the trial court had jurisdiction to subsequently clarify the order dividing military retirement benefits--i.e., he "seeks an order clarifying the previous QDRO to exclude from the definition of 'disposable retirement pay' the waived retirement pay related to disability benefits."

¶11 Husband seeks clarification of the following provision in paragraph 5 of the 1996 military pension division order:

l. Notwithstanding the provisions of 10 U.S.C. §1408(a)(4), for purposes of this Order the terms "military retired pay" and "retired pay" mean the full monthly retirement benefit [Husband] is or would be entitled to receive, before any statutory, regulatory, or elective deductions are applied. It includes retired pay paid or payable due to longevity of active duty and/or reserve service and all payments paid under the provisions of Title 10, Chapter 61, United States Code. It also includes all amounts of retired pay [Husband] in any manner actually or constructively waives or forfeits for any reason or purpose.

Husband asserts "the plain language of the QDRO appears to include waived military pay related to [his] disability pay" and "defines 'retirement pay' to include 'the full monthly benefit [he] is or would be entitled to receive before any statutory, regulatory, or elective deductions are applied' and 'also includes all amounts of retired pay [Husband] in any manner actually or constructively waives or forfeits for any reason or purpose.'" Husband further contends that "DFAS interpreted the QDRO to include the waived retirement pay in return for disability pay as retirement pay divisible and payable to [Wife] under the QDRO."

¶12 Even though Husband qualified for disability benefits after the agreed order dividing military pension was entered, Wife does not dispute she would not be entitled to any disability benefits pursuant to federal law. In fact, Wife states in her appellate brief: "Nothing in the Military Order grants to [Wife] any disability benefit, and after [Mansell v. Mansell, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989)], she would not be entitled to any disability benefit." Instead, Wife argues the relevant provision of the military pension order states that in the event Husband wrongfully receives Wife's portion of the disposable military retired pay, she must be repaid. These provisions in paragraph 5 state:

h. [Wife's] right to receive her portion of retired pay should begin immediately due to the fact that [Husband] has retired from the military service and is receiving retirement pay. [Wife] shall be entitled to 50% of the retired pay as and when [Husband] receives it. [Wife] shall receive by direct payment from the military finance center an amount of [Husband's] disposable military retired pay equal to 50% of the retired pay.

i. This monthly amount shall be increased each time [Husband] receives any adjustment to his retired pay. The increase in [Wife's] share shall be 50% of the increase in [Husband's] payments. In the event [Wife] does not receive the amount she is entitled to receive under the Order, [Husband] shall pay directly to [Wife] the amount [she] is entitled to receive if [he] receives [her] portion.

(Emphasis added.)

¶13 According to Wife, that is exactly what occurred in this case. She explains she is not trying to recover any of Husband's disability benefits he received as a result of waiving his retirement benefits. Federal law unambiguously prohibits Wife's recovery of such benefits. Mansell v. Mansell, 490 U.S. 581, 581, 109 S. Ct. 2023, 2024, 104 L. Ed. 2d 675 (1989)(The Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, "does not grant state courts the power to treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits."). To the contrary, Wife is arguing that according to the October 25, 2016, DFAS letter, Husband received her share of his disposable military retirement pay and it must now be repaid pursuant to the military pension order. The letter explains, "An audit of your Concurrent Retirement and Disability Pay (CRDP) has identified that your account is in an overpaid status in the amount of $91,538.00 for the time period of January 1, 2004 through August 31, 2013."

¶14 In 2004, Congress introduced the CRDP and the CRSC which allow qualified military retirees to receive both a certain amount of their retirement and disability pay with no reduction. See generally 10 U.S.C.A. §§ 1413a, 1414. The DFAS website provides the most lucid explanation of these programs that were "created by Congress to allow eligible military retirees to receive monthly entitlements in addition to retired pay." See https://www.dfas.mil/retiredmilitary/ disability/payment.html (last visited February 11, 2020). It further states that the CRDP "allows military retirees to receive both military retired pay and Veterans Affairs (VA) compensation. This was prohibited until the CRDP program began on January 1, 2004." https://www.dfas.mil/retiredmilitary/disability/crdp.html (last visited February 11, 2020). The "CRDP is a 'phase in' of benefits that gradually restores a retiree's VA disability offset. This means that an eligible retiree's retired pay will gradually increase each year until the phase in is complete effective January 2014." Id. Further, the CRDP is "subject to division with a former spouse." https://www.dfas.mil/retiredmilitary/disability/comparison.html (last visited February 11, 2020).

¶15 Wife argues that "[w]hile still receiving his VA disability pay, [Husband's] retirement pay increased gradually until the phase in period ended in 2014" and that "[d]uring the phase in period, DFAS failed to pay [Wife] her share of the retirement benefit under the Military Order, and instead paid it all to [Husband], thus the overpayment."

¶16 Wife argues she is entitled to her portion of Husband's retirement benefits as provided in the October 25, 2016, letter from DFAS during the time period of January 1, 2004 through August 31, 2013--i.e., the time in which Husband qualified and participated in the CRDP. There is nothing ambiguous about the provisions in the order dividing the military retirement pay. Husband's argument pertaining to waiver of retirement pay in order to receive disability pay is inapposite. Wife is seeking her share of the military retirement benefits which, phased in over 10 years from 2004 to 2013, were incorrectly paid solely to Husband, as DFAS explains in its letter. The military pension division order plainly awards Wife 50% of retired pay and if she does not receive the amount she is entitled to, she shall be repaid.

¶17 We have "consistently held that a final property division judgment is not subject to modification at a later date." Jackson v. Jackson, 2002 OK 25, ¶ 13, 45 P.3d 418.[2] The record shows unambiguously that Husband received military retirement benefits to which Wife was entitled for the phase-in period between 2004 and 2013 as provided by the CRDP. Disability payments play no part in the benefits to which Wife is entitled.

¶18 We conclude, as did the trial court, that the language in the order dividing the military retirement is clear and the trial court had no authority to change, amend, or modify this military pension division order.

CONCLUSION

¶19 Our analysis leads us to one conclusion--that the trial court correctly determined it had no jurisdiction to change the agreed order dividing Husband's military retirement benefits, and we affirm.

¶20 AFFIRMED.

REIF, S.J. (sitting by designation), and THORNBRUGH, P.J., concur.

FOOTNOTES

[1] This is a program known as "Combat-Related Special Compensation" enacted to compensate combat veterans. Nothing in the record indicates Husband is eligible for or receives CRSC.

[2] However, "a trial court has the authority to issue a subsequent QDRO if an initial one contains some ambiguity concerning the proper division of a retirement benefit under an earlier entered divorce decree, as long as the later QDRO does not alter what was awarded initially by the decree, but conforms to it." Jackson v. Jackson, 2002 OK 25, ¶ 15, 45 P.3d 418. Wife maintains such a military order is not a QDRO. It is unnecessary for us to make this determination and we decline to do so.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 25, 45 P.3d 418, JACKSON v. JACKSON
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA