2002 OK 79

Melvin L. TUBBS, Plaintiff/Appellant,

v.

STATE of Oklahoma, ex rel., The TEACHERS' RETIREMENT SYSTEM OF OKLAHOMA, Defendant/Appellee.

No. 95,968.

Supreme Court of Oklahoma.

Oct. 15, 2002.

Joe B. Reeves, Lawton, for Appellant.

John McCormick, Asst. Attorney General, Oklahoma City, for Appellee.

Lydia Lee, Oklahoma City, for Amicus Curiae, Oklahoma Public Employees Retirement System.

SUMMERS, J.

¶ 1 The plaintiff, Tubbs, retired as a school teacher and subsequently was divorced. In dividing the marital property the divorce court entered an order concerning Tubbs' retirement benefits that the Teachers' Retirement System declined to follow. He appealed to the District Court of Oklahoma County, which affirmed the Board's order, and then appealed to this Court. We conclude that the Teachers' Retirement System erred in not following the divorce court's order, and direct that the District Court render judgment for Tubbs upon remand.

¶ 2 Tubbs' career with the Lawton Public Schools lasted from August 1967 until May

1996. He was a member of the Oklahoma Teachers' Retirement System. He married in 1989, and upon his retirement in 1996 he named his wife as beneficiary of certain retirement benefits. By designating his wife as a beneficiary the sum of $107.04 per month was deducted from his monthly retirement benefit.

¶ 3 Tubbs and his wife were divorced by a decree of the District Court of Comanche County on March 3, 2000.[1] That decree included the following award to Tubbs:

> All right title and interest in and to plaintiff's retirement and pension benefits from the Oklahoma State Teachers Retirement System; and provided further that any survivor benefits previously designated for the defendant are hereby terminated by this decree under the provisions of 15 O.S. 178(A) and Oklahoma Retirement System Rule 715:10–9–7;

O.R. at 132.

A few weeks after the decree the District Court of Comanche County issued "a qualified domestic order."[2] The order included the following:

> The Member is awarded all right, title and interest in and to member's retirement and pension benefits from the Oklahoma State Teachers Retirement System and all benefits previously designated for the defendant are hereby terminated under the provisions of 15 O.S. 178(A) and Oklahoma Teacher Retirement System Rule 715:10–9–7 and § 17–109(B)(5)(c).

O.R. at 137.

The Teachers' Retirement System (TRS), through its Executive Secretary, declined to follow the order of the District Court. Tubbs protested the decision and requested a hearing.

¶ 4 The hearing officer issued proposed findings of fact and conclusions of law.[3] He

1. Original Record on appeal (O.R.), at 131–135, Journal Entry of Judgment and Decree of Divorce, No. FD–98–1081, District Court of Comanche County, (March 3, 2000).

2. O.R. at 136–139, Qualified Domestic Order For Purposes Of Dividing Oklahoma Teachers' Retirement System Benefits, No. FD–98–1081, District Court of Comanche County, (April 18, 2000).

3. O.R. at 70–74, Proposed·Findings of Fact and Conclusion of Law, No. OTRS–00–006–BEN, Board of Trustees of the Teachers' Retirement System of Oklahoma, (July 18, 2000).

concluded that a "death benefit" could be changed by Tubbs or the District Court, but that "survivor benefits" to be paid in the future to Tubbs' spouse during her life in the event he predeceased her could not be altered by the District Court. In September of 2000 a hearing was held before the Board of Trustees of the Teachers' Retirement System where the Board accepted the hearing officer's proposed findings and conclusions.

¶ 5 Tubbs then appealed the decision of the Board to the District Court of Oklahoma County. The District Court found no error in the administrative proceedings, and issued an order affirming the order of the Board of Trustees. Tubbs appealed the order of the District Court to this Court, and we retained the appeal.

¶ 6 The parties in effect urge and counter-urge two propositions. The first would have us determine whether a statute enacted in 1987, 15 O.S.1991 § 178(A) causes or does not cause certain Teachers' Retirement benefits to be extinguished in the event of divorce. The second is whether a district court has the power to award the value of a spouse's survivor's annuity benefit to the other spouse, a member of the Teachers' Retirement System, in a divorce. We answer the second proposition in the affirmative. For that reason, we need not concern ourselves further with the applicability of section 178(A), and whether it applies in the absence of the death of the party to a contract providing death benefits.[4]

¶ 7 In May of 1996 when Tubbs retired he was required to select one of five retirement plans. They were: The Maximum Retirement Plan, Retirement Option 1, Retirement Option 2, Retirement Option 3, or Retirement Option 4.[5] Two of these plans, "Option

---

4.  15 O.S.1991 § 178 Contracts designating former spouse as beneficiary or providing *death benefits*—Effect of divorce or annulment

    A. If, after entering into a written contract in which a beneficiary is designated or provision is made for the payment of any *death benefit* (including life insurance contract, annuities, retirement arrangements, compensation agreements, depository agreements, security registrations, and other contracts designating a beneficiary of any right, property, or money in the form of a death benefit), the party to the contract with the power to designate the beneficiary or to make provision for payment of any *death benefit dies* after being divorced from the person designated as the beneficiary or named to receive such *death benefit*, all provisions in the contract in favor of the decedent's former spouse are thereby revoked. Annulment of the marriage shall have the same effect as a divorce. In the event of either divorce or annulment, the decedent's former spouse shall be treated for all purposes under the contract as having predeceased the decedent. (Emphasis added)

5.  The five plans (or options) are set forth in both statute and rules of the Teachers' Retirement System. The cited rules are based upon the statutory retirement plans codified at 70 O.S. § 17–105. In May of 1996 when Tubbs retired the 1995 version of § 17–105 was in effect. See the historical annotation of amendments to the statute at 70 O.S.Supp.1995 § 17–105 and 70 O.S.Supp.1997 § 17–105. The five plans are:

    1. The "Maximum Retirement Plan" which "is the monthly entitlement calculated using the standard retirement formula set by statutes." O.A.C. 715:10–15–10(1) (1996).

    2. "Retirement Option 1" which provides a slightly reduced lifetime benefit and calculated as "the difference between the annuity portion of the maximum retirement plan and the annuity portion of an Option 1 retirement plan subtracted from the Maximum retirement plan." O.A.C. 715:10–15–10(2) (1996).

    3. "Retirement Option 2" which provides a reduced monthly benefit payable to the member for life. "At the death of the retired member, the same monthly benefit payable to the member, shall continue to the spouse of the member, if living." "This option is known as a '100% joint survivor annuity.'" O.A.C. 715:10–15–10(3) (1996).

    4. "Retirement Option 3" which provides a reduced monthly benefit payable to the member for life. "At the death of the retired member, one-half (or 50%) of the monthly benefit payable to the member, shall continue to the spouse of the member, if living." "This option is known as a '50% joint survivor annuity.'" O.A.C. 715:10–15–10(4) (1996).

    5. "Retirement Option 4" which provides a reduced monthly benefit payable to the member for life. "In the event the retired member dies within one hundred twenty (120) continuous months from the date of retirement, the balance of the payments are continued to the designated beneficiary until a total of one hundred twenty (120) months have been completed." O.A.C. 715:10–15–10(5) (1996).

    The 1996 edition of the Oklahoma Administrative Code states that it is "Comprising All Permanent and Preemptive Rules Filed With The Secretary of State *Through December 31, 1996*." (Emphasis added). The 1996 edition states that O.A.C. 715:10–15–10 was previously amended effective 10–14–94 through 7–14–95, and subsequently amended effective July 27, 1995, and thus the version of the rules reported in the 1996

2" and "Option 3" provide for monthly benefits payable to the spouse of the retired member after the member dies. O.A.C. 715:10–15–10(3),(4) (1996). When a member of the retirement system retires and does *not* select either Option 2 or Option 3, and the member is married, the member's spouse must consent to the retirement option selected by the member.[6] Upon retirement Tubbs selected Option 3, and his wife obtained a survivor's benefit.

¶ 8 The value of the survivor's benefit in the Teachers' Retirement System is capable of calculation when the teacher retires. Indeed, the System is *required* to make this calculation when determining the amount subtracted from the member's monthly benefit for the purpose of funding the survivor's benefit for an Option 3 plan.

> The reduction in the monthly payment, while not as great as the Option 2 plan, still requires a substantial reduction because two people are protected for the life of both individuals. The actual reduction is based on actuarial tables developed for this purpose and approved by the Board of Trustees. The age of the spouse is an important factor in computing this benefit.

O.A.C. 715:10–15–10(4) (1996).

Thus, after the member's retirement the member's spouse possesses an easily identifiable and calculable economic interest in the member's Option 3 plan. Is the survivor's interest a type of property that a district court may divide between the parties to a divorce? We believe it is, as we now explain.

¶ 9 A district court possesses power in a divorce proceeding to divide the marital estate. *Larman v. Larman*, 1999 OK 83, ¶ 17, 991 P.2d 536. Generally, a pension right burdened with a conjugal interest is a type of marital asset divided between the parties to a divorce. *Thielenhaus v. Thielen-*

*haus*, 1995 OK 5, 890 P.2d 925, 931. We have said that "absent a specific statutory exception ... a trial court may consider the pension as jointly acquired, make a grant of that property to one spouse and then make a compensating award to the other spouse." *Rice v. Rice*, 762 P.2d, 925, 926–927. In *Rice* we affirmed that part of the divorce decree that awarded a retired police officer his retirement funds and a cash award to the wife to offset the value of her interest in the pension. Further, it is not uncommon for a pension or retirement plan to provide for benefits to a survivor. *See, e.g., Pulliam v. Pulliam*, 1990 OK 71, ¶¶ 6–7, 796 P.2d 623, 624, (plan included survivor's benefits).

¶ 10 The Teachers' Retirement System relies upon *Ozment v. Ozment*, 2000 OK CIV APP 52, 11 P.3d 635, for the proposition that a retiree's selection of a retirement option cannot be altered by a divorce proceeding because that selection is irrevocable. *Ozment* is a non-precedential opinion[7] and does not address a divorce decree after retirement. The argument made by the Teachers' Retirement System based on *Ozment* is essentially thus:

> A retiree elects a retirement option.

> A retiree's election of a retirement option is irrevocable.

> Thus, a district court is without power to alter an irrevocable option.

The Retirement System would equate a retiree's power to elect an option with a district court's power to make division of marital property. With this we do not agree, as will be explained.

¶ 11 The statutory authority, 70 O.S.Supp. 1999 § 17–109, states that a district court may issue a qualified domestic order. A qualified domestic order for the purpose of the Teachers' Retirement System is:

edition was in effect in May of 1996 when Tubbs retired.

**6.** O.A.C. 715:10–15–12 (1996), "Spousal consent," states in part that:

"If the member is married at the time of retirement, the retiring member's spouse must complete Part A, acknowledging that the retirement options available to the member have been explained to the spouse and the spouse concurs

with the retirement option selected by the retiring member."

**7.** *Ozment* was released for publication by the Court of Civil Appeals. Such opinions have persuasive effect, but are not precedential. 12 O.S. 2001 Ch. 15, App., Okla.Sup.Ct.R. 1.200(c)(2). *See also Sommer v. Sommer*, 1997 OK 123, ¶ 26, 947 P.2d 512, 519; *Manley v. Brown*, 1999 OK 79, n. 9, 989 P.2d 448, 452.

... an order issued by a district court of this state pursuant to the domestic relation laws of the State of Oklahoma which relates to the provision of marital property rights to a spouse or former spouse of a member or provision of support for a minor child or children *and which creates or recognizes* the existence of the right of *an*

8. The version of § 17–109 effective upon Tubbs' retirement, 70 O.S.Supp.1995 § 17–109, was amended twice thereafter prior to the divorce decree, once in 1998 and again in 1999. All three versions recognize a district court's authority in creating alternate payees on the basis of adjudicating marital property interests. The 1999 version states:

§ 17–109. Exemption from legal process

A. Except as otherwise provided by this section, the right of a person to an annuity or a retirement allowance, to the return of contributions, annuity, or retirement allowance itself, any optional benefit, or any other right accrued or accruing to any person under the provisions of this act, and the monies in the various funds created by this act, are hereby exempt from levy and sale, garnishment, attachment or any other process whatsoever, and shall be unassignable except as in this act specifically provided. Notwithstanding the foregoing, the Board of Trustees may approve any offset of a member's benefit to pay a judgment or settlement against a member for a crime involving the System, for a breach of the member's fiduciary duty to the System, or for funds or monies incorrectly paid to a member or a beneficiary by mistake, provided such offset is in accordance with the requirements of Section 401(a)(13) of the Internal Revenue Code of 1986.

B. 1. The provisions of subsection A of this section shall not apply to a qualified domestic order as provided pursuant to this subsection.

2. The term "qualified domestic order" means an order issued by a district court of this state pursuant to the domestic relation laws of the State of Oklahoma which relates to the provision of marital property rights to a spouse or former spouse of a member or provision of support for a minor child or children and which creates or recognizes the existence of the right of an alternate payee, or assigns to an alternate payee the right, to receive a portion of the benefits payable with respect to a member of the Retirement System.

3. For purposes of the payment of marital property, to qualify as an alternate payee, a spouse or former spouse must have been married to the related member for a period of not less than thirty (30) continuous months immediately preceding the commencement of the proceedings from which the qualified domestic order issues.

4. A qualified domestic order is valid and binding on the Board of Trustees and the related

*alternate payee,* or assigns to an alternate payee the right, to receive a portion of the benefits payable with respect to a member of the Retirement System."

70 O.S.Supp.1999 § 17–109(B)(2), emphasis added.[8]

Thus a district court has the authority to determine the payees of the retirement member only if it meets the requirements of this subsection.

5. A qualified domestic order shall clearly specify:

a. the name and last-known mailing address (if any) of the member and the name and mailing address of the alternate payee covered by the order,

b. the amount or percentage of the member's benefits to be paid by the Retirement System to the alternate payee,

c. the number of payments or period to which such order applies,

d. the characterization of the benefit as to marital property rights or child support, and

e. each plan to which such order applies.

6. A qualified domestic order meets the requirements of this subsection only if such order:

a. does not require the Retirement System to provide any type or form of benefit, or any option not otherwise provided under state law as relates to the Retirement System,

b. does not require the Retirement System to provide increased benefits, and

c. does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee pursuant to another order previously determined to be a qualified domestic order or an order recognized by the Retirement System as a valid order prior to the effective date of this act.

7. A qualified domestic order shall not require payment of benefits to an alternate payee prior to the actual retirement date or withdrawal of the related member.

8. The obligation of the Retirement System to pay an alternate payee pursuant to a qualified domestic order shall cease upon the death of the related member.

9. This subsection shall not be subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. Section 1001, et seq., as amended from time to time, or rules and regulations promulgated thereunder, and court cases interpreting said act.

10. The Board of Trustees of the Teachers' Retirement System of Oklahoma shall promulgate such rules as are necessary to implement the provisions of this subsection.

11. An alternate payee who has acquired beneficiary rights pursuant to a valid qualified domestic order must fully comply with all provisions of the rules promulgated by the Board of Trustees pursuant to this subsection in order to continue receiving his or her benefit.

benefit, regardless of whether the non-member spouse is listed as a payee in a particular retirement option.

¶ 12 Whenever a divorce occurs, either before or after retirement, a district court possesses the power to award the respective spouses the property to which each of them is entitled. Pension benefits accumulated during the marriage as jointly acquired *property* are subject to equitable division in a divorce. *Jackson v. Jackson*, 2002 OK 25, ¶ 13, 45 P.3d 418, 426. Property rights held by both the member and the member's spouse are not destroyed by the retirement of the member. Of course, after retirement the nature of the property interest is different,[9] but that difference does not limit a district court in awarding each spouse his or her equitable share of the retirement benefit.

¶ 13 A district court's determination of respective property interests in retirement benefits, however, is guided and limited by statute. These limitations are included in the statute setting forth the district court's statutory authority to create alternate payees and divide retirement benefits. For example, § 17–109 states that

A qualified domestic order meets the requirements of this subsection only if such order:

a. does not require the Retirement System to provide any type or form of benefit, or any option not otherwise provided under state law as relates to the Retirement System,

b. does not require the Retirement System to provide increased benefits,

70 O.S.Supp.1995 § 17–109(6)(a) & (b).

The Teachers' Retirement System in our case today urges that a District Court may not issue a qualified domestic order *after* a member's retirement date that alters the survivor's benefit because such would provide an option not granted by state law, i.e., a change in the irrevocable selection previously made by Tubbs.

¶ 14 This characterization by the Teachers' Retirement System is incorrect. Tubbs is currently paying $107.04 monthly by a deduction *from his Option 3 retirement benefit* to the Teachers' Retirement System to fund the survivor's benefit, a property interest possessed by his spouse. The order of the District Court of Comanche County requires this deduction to stop. The Teachers' Retirement System has not put forward any evidence that the $107.04 deduction was calculated in some manner that its cessation would result in making Tubbs' monthly benefit in excess of the actuarial value of his retirement allowance.

¶ 15 The Retirement System argues that selection of a retirement plan is irrevocable, and thus a district court cannot change a survivor's benefit. In support of this anti-revocation argument the system relies upon language in 70 O.S. § 17–105(8)(c) that was first added to that statute approximately two years *after* Tubbs retired.[10] In May of 1996 when Tubbs retired the relevant language stated:

9. See the discussions of when public pension benefits vest in *Woods v. City of Lawton*, 1992 OK 167, 845 P.2d 880, 882; *Snider v. Board of Trustees for Oklahoma Police Pension and Retirement Bd.*, 1989 OK 136, 782 P.2d 911, 914–915; *Baker v. Oklahoma Firefighters Pension and Retirement System*, 1986 OK 8, 718 P.2d 348, 353.

10. In 1998 the language describing Option 3 was amended twice. See 1998 Okla.Sess.Laws Ch. 360 § 1, at p. 1536, (approved June 8, 1998, and eff. July 1, 1998), and 1998 Okla.Sess.Laws Ch. 419 § 9, at p. 220 (approved June 11, 1998, and eff. July 1, 1998). The first version, approved June 8, stated that the designation of a beneficiary could not be changed. However, the second version approved on June 11, 1998 omitted this

language. The 1999 version of the statute incorporated changes made by both of the 1998 amendments. See 1999 Okla.Sess.Laws, Ch. 1, § 26 at p. 58, eff. Feb. 24, 1999.

Generally, the latest enactment in point of time will ordinarily prevail, but in construing statutes passed at the same session of the Legislature, and at nearly the same time, there is a strong presumption against implied repeals. *In re Adoption of Lewis*, 1963 OK 24, 380 P.2d 697, 700. Because we assume that the 1999 version of § 17–105 in effect at the time of the divorce decree applies to Tubbs, we need not address whether the language omitted by the second 1998 version was in effect prior to the 1999 amendment.

Option 3. A member receives a reduced retirement allowance for life. Upon the death of the member one-half (½) of the retirement allowance paid the member shall be continued throughout the life of the designated beneficiary, who must be a spouse. A written designation of a beneficiary must be duly acknowledged and filed with the Board of Trustees at the time of the member's retirement; or

70 O.S.Supp.1995 § 17–105(8)(c).

At the time of the divorce decree, in March of 2000, the 1999 version of the statute was in effect and stated:

Option 3. A member receives a reduced retirement allowance for life. Upon the death of the member one-half (1/2) of the retirement allowance paid the member shall be continued throughout the life of the designated beneficiary. A written *designation of a beneficiary* must be duly acknowledged and filed with the Board of Trustees at the time of the member's retirement and *cannot be changed after the effective date of the member's retirement;* or

70 O.S.Supp.1999 § 17–105(8)(c), (emphasis added).

Assuming, but not deciding, that the 1999 version applies to Tubbs, this language does not mean that the selected option cannot be changed under any circumstance. For example, that same statute states, in both its 1995 and 1999 versions, that the Option 2 or Option 3 plan selected by a retiree would be changed to a different plan when a retiree's spouse predeceased the retiree.

If the named beneficiary under Option 2 or 3 dies at any time after the member's retirement date, but before the death of the member, the member shall return to the retirement benefit, including any post retirement benefit increase the member

would have received had the member not selected Option 2 or 3 of this subsection. 70 O.S.Supp.1999 § 17–105(8)(c).

The language of Option 3 is that the "designation of a beneficiary . . . cannot be changed", but this language must be read to allow a change in beneficiary when this or other statutes relating to these retirement options authorize such a change. For example, § 17–105(8)(c)[11] allows a change, and § 17–109 allows district court adjudication of all retirement benefits, including those possessed by virtue of survivorship status. We thus view the prohibition upon changing the beneficiary as a limitation upon the power of the *retiree* to change his or her designated beneficiary,[12] and not a limitation upon a district court's power when adjudicating the property rights of the parties before it. A district court must determine the marital component of the retirement benefit and divide it between the parties. *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, 931.

¶ 16 The Teachers' Retirement System makes an appeal to its status as an administrative agency interpreting state statute. The record does not reflect any evidence of longstanding agency policy that § 17–109 limits a district court's authority to award the monthly deduction for a survivor's benefit to the member paying the deduction. Thus, as we said in *Globe Life and Acc. Ins. Co. v. Oklahoma Tax Commission*, 1996 OK 39, 913 P.2d 1322: "The doctrine of *Oral Roberts University v. Oklahoma Tax Commission*, Okl., 714 P.2d 1013, 1015 (1985), is sans record support for its application to this case." *Globe Life*, at n. 29, 913 P.2d at 1328. We also note that an administrative agency's statutory interpretation must be reasonable, and the agency cannot extend its power beyond that granted by statute. *Henderson v. Maley*, 1991 OK 8, n. 7, 806 P.2d 626, 633.

¶ 17 A district court possesses the power to adjudicate all of the property rights held by the spouses in the retirement benefit,

---

11. When Tubbs retired the retirement system provided, and still provides, a procedure for changing, after retirement of the retiree, an Option 2 or Option 3 retiree to the Maximum plan retiree if the retiree's spouse dies. O.A.C. 715:10–15–10.1 (1996).

12. The designation of beneficiary of Teachers' Retirement System benefits is contractual. *Pepper v. Peacher*, 1987 OK 71, 742 P.2d 21, 25.

whether those benefits are currently paid to the member or to the spouse at some future date. 70 O.S.Supp.1999 § 17–109. Both types of interests are valued by the Teachers' Retirement System when a member retires, and may be awarded by a court to the member or spouse owning such interests at the time of the post-retirement divorce.

¶ 18 An administrative order is subject to reversal if an appealing party's substantial rights are prejudiced because the agency's decision is entered in excess of statutory authority or jurisdiction, or if an order is entered based on an error of law, or if the agency's findings are clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record. *City of Tulsa v. State ex rel. Public Employees Relations Bd.,* 1998 OK 92, ¶¶ 12–13, 967 P.2d 1214, 1219. This Court may direct a district court to enter judgment when nothing is left to be adjudicated upon remand. *Sandefur v. Vanderslice,* 1944 OK 129, 151 P.2d 430. The Board of Trustees of the Teachers' Retirement System of Oklahoma made an error of law when deciding Tubbs' protest. Nothing remains to be adjudicated in the District Court of Oklahoma County upon remand.

¶ 19 That part of the judgment of the District Court of Oklahoma County affirming the final Order of the Board of Trustees of the Oklahoma Teachers' Retirement System is reversed, and the matter is remanded to that court with directions to enter judgment for the Plaintiff Tubbs, and directing the Board to enter an Order consistent with the provisions of the Decree of Divorce previously entered by the District Court of Comanche County.

¶ 20 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU and WINCHESTER, JJ.— concur.

¶ 21 OPALA, J.—concurs in part, dissents in part.