OSCN Found Document:UNIBRIDGE SYSTEMS, INC. v. PATTERSON

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 UNIBRIDGE SYSTEMS, INC. v. PATTERSON
2017 OK CIV APP 32
Case Number: 114522
Decided: 05/05/2017
Mandate Issued: 06/06/2017
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2017 OK CIV APP 32, __ P.3d __

 

UNIBRIDGE SYSTEMS, INC., an Oklahoma Corporation, Plaintiff/Appellant,
v.
MIKE PATTERSON, Director of the Oklahoma Department of Transportation; STATE OF OKLAHOMA, ex rel. OKLAHOMA DEPARTMENT OF TRANSPORTATION, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
WOODWARD COUNTY, OKLAHOMA

HONORABLE DON A. WORK, TRIAL JUDGE

AFFIRMED

Katresa J. Riffel, J. Piper Bowers, RIFFEL LAW FIRM, PLLC, Enid, Oklahoma, for Plaintiff/Appellant
Norman Hill, GENERAL COUNSEL, OKLAHOMA DEPARTMENT OF TRANSPORTATION, David Allen Miley, ASSISTANT GENERAL COUNSEL, Oklahoma City, Oklahoma, for Defendants/Appellees

JERRY L. GOODMAN, JUDGE:

¶1 Unibridge Systems, Inc. (Unibridge) appeals a November 13, 2015, trial court order which affirmed the decision of the Oklahoma Department of Transportation (ODOT) denying Unibridge's protest of a bid awarded to Cardinal Scale Manufacturing (Cardinal). Based upon our review of the facts and applicable law, we affirm.

FACTS AND PROCEDURAL BACKGROUND

¶2 ODOT issued Solicitation #3450004339 and a Request for Proposal (RFP) for the demolition and replacement of a scale and pit for the El Reno Eastbound Truck Scale House on June 5, 2014. The Scope of Work required, inter alia, that the scale contain hydraulic compression stainless steel load cells, which shall meet applicable maintenance tolerance as specified in the National Institute of Standards and Technology (NIST) Handbook 44. The Scope of Work further required the scale system and components to be listed on National Type Evaluation Program (NTEP) Certificates of Conformance.

¶3 Two bids were submitted. On July 7, 2014, Cardinal submitted a bid of $299,950.00. On July 18, 2014, Unibridge submitted a bid of $262,846.00. Unibridge's bid was subsequently deemed nonresponsive because: 1) it did not bid a hydraulic compression type scale but rather had bid an electronic analog type load cell system; and 2) Unibridge's system was to be constructed of a non-specified type of alloy steel rather than stainless steel. On July 28, 2014, ODOT awarded the contract to Cardinal after determining it had the most responsive bid meeting the requirements of the Solicitation.

¶4 On July 30, 2014, Unibridge filed a Protest of Award with the ODOT Purchasing Office. On August 8, 2014, ODOT's Purchasing Manager denied Unibridge's Protest. On August 21, 2014, Unibridge appealed to the Office of Management and Enterprise Services pursuant to the Oklahoma Administrative Code (OAC) 260-115-3-19, which was subsequently transferred to ODOT for consideration.[1] Unibridge asserted, inter alia, that the Solicitation should have been let pursuant to the Oklahoma Public Competitive Bidding Act of 1974 (PCBA), 61 O.S.2011, § 101 et seq., rather than the Oklahoma Central Purchasing Act (CPA), 74 O.S.2011, § 85.1 et seq. The Administrative Law Judge (ALJ), in a Fourth Prehearing Conference Order issued on November 5, 2014, determined that jurisdiction for the proceeding existed under the CPA, and the rules promulgated thereto, OAC 260:115-3-19. The ALJ further established the issues to be addressed: 1) whether the Solicitation is for goods and services, governed by the CPA; 2) whether ODOT improperly bid out the acquisition under the CPA; 3) did ODOT violate the required competitive bidding process in the Solicitation; and 4) the Solicitation requires compliance with Handbook 44. "If the accepted bid ... failed to meet [those] requirements, did ODOT violate the provisions of the [CPA] and rules promulgated thereto in awarding the bid to the successful bidder."

¶5 After a hearing on January 26, 2016, the ALJ issued findings of fact and conclusions of law on March 11, 2015. The ALJ recommended Unibridge's appeal be denied, finding, inter alia, that the Solicitation was properly let under the CPA as the contract involved an acquisition of various equipment and services relating to a new truck scale in El Reno, Oklahoma, which meets the definition for "acquisition" under the CPA. See 74 O.S.2011 and Supp. 2013, § 85.2(1). In addition, ALJ found the Scope of Work required, inter alia, that the scale contain hydraulic compression and stainless steel load cells. However, Unibridge did not bid a hydraulic load cell system or stainless steel materials and was therefore properly eliminated as a nonresponsive bid. Cardinal, on the other hand, was determined to have bid a hydraulic load cell system that included stainless steel materials. Thus, its bid was determined to be the most responsive bid.

¶6 The Executive Director of ODOT entered a Final Agency Order on March 23, 2015, adopting the ALJ's proposed order and affirming the denial of Unibridge's bid protest. Unibridge appealed to the District Court of Woodward County on April 22, 2015, pursuant to 75 O.S.2011, § 318. The court ultimately affirmed the Final Agency Order by order entered on November 13, 2015. Unibridge appeals.

STANDARD OF REVIEW

¶7 The standard of review for appeals from an administrative agency is found at 75 O.S.2011, § 322. "An agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error." Agrawal v. Okla. Dept of Labor, 2015 OK 67, ¶ 5, 364 P.3d 618, 620 (citing Scott v. Okla. Secondary Sch. Activities Ass.'n, 2013 OK 84, 313 P.3d 891). "The order is subject to reversal, however, if the appealing party's substantial rights were prejudiced because the agency's findings, inferences, conclusions or decisions were entered in excess of its statutory authority or jurisdiction, or were arbitrary, capricious, or clearly erroneous in view of the reliable, material, probative and substantial competent evidence." Id. An appellate court may not substitute its judgment for that of the agency on its factual determinations. Agrawal, 2015 OK 67, at ¶ 5, 364 P.3d at 20 (citing Oklahoma Dep't of Pub. Safety v. McCrady, 2007 OK 39, ¶ 10, 176 P.3d 1194, 1200-01); 75 O.S.2011, § 322.

ANALYSIS

¶8 For its first assertion of error on appeal, Unibridge contends the trial court erred in affirming the agency's determination that the Solicitation was a contract for goods and services that was properly let under the CPA. Unibridge asserts the Solicitation should have been let under the PCBA, 61 O.S.2011, § 101 et seq., which applies to contracts which involve construction. Unibridge notes the Solicitation requests the design and fabrication of a three-platform truck scale, demolition of the old scale pit, construction of a new scale pit, foundation, and approach slab. Thus, it is a public construction contract enhancing the utility and value of public property. At a minimum, Unibridge asserts the contract was a mixed contract, partially construction and partially goods and services, with construction at its core, citing Gilbert Cent. Corp. v. State of Oklahoma, 1986 OK 6, ¶ 35, 716 P.2d 654, 663. Thus, it should have been let under the PCBA.

¶9 ODOT disagrees, asserting the Solicitation was properly let pursuant to the CPA to acquire a new truck scale to replace the broken scale at the El Reno Truck Scale House. ODOT contends, much like the purchase and installation of a water heater, the acquisition of the scale was a transaction for the sale of goods and that the installation services were merely incidental to producing the piece of equipment. Thus, the Solicitation was properly let under the CPA.

¶10 In the present case, the parties clearly disagree as to which Act governs. The Oklahoma legislature adopted the CPA to govern the expenditures of governmental agencies in acquiring goods or services. Indiana Nat'l Bank v. State of Oklahoma ex rel., Dept. of Human Serv.'s, 1993 OK 101, ¶ 12, 857 P.2d 53, 60. The Act applies to all "acquisitions" by state agencies, which term is defined broadly to include "items, products, materials, supplies, services, and equipment a state agency acquires by purchase, lease-purchase, lease with option to purchase, or rental... ." 74 O.S.2011 and Supp. 2013, § 85.2(1).

¶11 The PCBA, on the other hand, applies to "public construction contracts," which are defined as:

[]any contract, exceeding Fifty Thousand Dollars ($50,000.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to or performing maintenance on the same ....

61 O.S.2011 and Supp. 2013, § 102(6). "Public improvement" is defined as:

[]any beneficial or valuable change or addition, betterment, enhancement or amelioration of or upon any real property, or interest therein, belonging to a public agency, intended to enhance its value, beauty or utility or to adapt it to new or further purposes. The term does not include the direct purchase of materials, equipment or supplies by a public agency, or any personal property, including property as defined in paragraphs 1 and 4 of subsection B of Section 430.1 of Title 62 of the Oklahoma Statutes;

Id. at § 102(7). The term construction means "to put together the materials and constituent parts used therein in their proper place and order." Carpet City, Inc. v. Stillwater Mun. Hosp. Auth., 1975 OK 75, ¶ 18, 536 P.2d 335, 338. All public construction contracts are to be awarded to the lowest responsible bidder by free and open competitive bidding after solicitation for sealed bids. See 61 O.S.2011 and Supp. 2013, § 103(A).

¶12 In Gilbert Central Corp., the Oklahoma Supreme Court stated:

Where a transaction has the attributes of a "sale," but is a mixed transaction, calling for both the transfer of an interest in property and the furnishing of work, labor and services, whether the transaction constitutes a "sale" or a contract for work, labor and materials depends on whether the predominant thrust of the contract was the furnishing of work, labor and services, or the transfer of an interest in the property.

Id., 1986 OK 6, at ¶ 33, 716 P.2d at 662-63.

¶13 In the present case, the Solicitation sought the acquisition of a truck scale, as well as the demolition of the old scale pit, and construction of a new scale pit, foundation, scale decks, and approach slab. Greg Allen, an ODOT engineer, Erick Johnson, ODOT Division Manager, Facilities Management Division, and Mitch Surrett, ODOT Assistant General Counsel, testified they were part of a committee that created the Scope of Work for the Solicitation and evaluated the bids received from Cardinal and Unibridge. Surrett stated he submitted the Requisition for the project for approval.[2] Cheryl Emerson and Jennifer Mason, both Purchasing Managers and Certified Procurement Officers with ODOT, testified they made the determination to bid under the CPA and not the PCBA based on the Requisition received, determining it was ultimately an acquisition of goods and services. However, Larry Joe Hamilton, Unibridge's President, testified he believed the Solicitation called for a construction project. ODOT's expert and the Vice President of Engineering Services for Cardinal, Stephen Langford, also agreed at least a portion of the project was construction.

¶14 Accordingly, based on our review of record on appeal, the Solicitation has aspects of both construction and the acquisition of goods and services. The ALJ made the following finding of fact from the evidence presented: "the contract for the El Reno Hydraulic Scales involves an acquisition of various equipment and services relating to a new truck scale ... which meets the definition for 'Acquisition' in the [CPA]." We find that the agency's findings on this issue are not clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record. Tubbs v. State of Oklahoma, ex rel., v. The Teachers' Ret. Sys. of OK, 2002 OK 79, ¶ 18, 57 P.3d 571, 579 (citation omitted). ODOT clearly sought the acquisition of a new 3 platform truck scale. The construction services were merely incidental to the implementation of that purchase. Accordingly, the Court agrees the predominant thrust of the contract was the transfer of an interest in the scale. This assertion of error is therefore rejected.

¶15 For its second assertion of error, Unibridge contends the trial court erred in upholding the agency decision finding the Solicitation was a not a sole source contract. Pursuant to 74 O.S.2011 and Supp. 2012, § 85.45j, ODOT is authorized to make a sole source acquisition of goods and services if it certifies why a particular "person or business entity [is] singularly qualified to provide the acquisition" or that a brand or product is unique as well as state all efforts made to verify that the acquisition qualifies as a sole source.

¶16 Unibridge contends Cardinal is the only company known to design and manufacture hydraulic compression stainless steel load cells as the Solicitation specifies. ODOT disagrees, asserting its internet research indicated several suppliers were available and that Unibridge could have purchased the product from one of the companies to include in its bid. Unibridge disputes ODOT's assertions, noting ODOT made no effort to determine if the companies made hydraulic load cells that were stainless steel, complied with the specifications of the Solicitation, or if their products could even be used in scales.

¶17 The record provides that several of ODOT's employees conducted an internet search to determine if there were potential suppliers of the requested equipment. Emerson testified the Solicitation was not a sole source acquisition, stating she searched the internet and that "there appears to be other companies out there that have the ability to produce hydraulic load cell systems as part of their product lines." Emerson acknowledged, however, that she had no knowledge whether those companies would have been able to comply with the Solicitation. Allen also testified he did an internet search. However, he stated he only looked for companies that might manufacture hydraulic load cells and not whether the company could manufacture the set of scales as specified in the Solicitation. Finally, Langford testified, stating Emery Winslow is the only other company that he is aware of that manufactures a hydraulic load cell that is NTEP certified. Hamilton disagreed, however, stating Emery Winslow's hydraulic load cell would not have met the Solicitation's specifications.

¶18 The ALJ made the following finding of fact from the evidence presented: "According to the testimony of ODOT witnesses, this Solicitation was not a sole source acquisition, and more than one bidder could provide the product." Based on our review of the record, there is evidence, though minimal, to support this finding. Langford testified to personal knowledge that Emery Winslow manufactured a hydraulic load cell. Although Hamilton disputed that Emery Winslow's scales could meet the Solicitation's specifications, an appellate court may not substitute its judgment for that of the agency on its factual determinations. Agrawal, 2015 OK 67, at ¶ 5, 364 P.3d at 621 (citing McCrady, 2007 OK 39, at ¶ 10, at 1200-01); 75 O.S.2011, § 322. Accordingly, we find no error, and this assertion is denied.

¶19 For its third assertion of error, Unibridge contends it provided sufficient evidence to establish the Solicitation awarded to Cardinal was in violation of Handbook 44. Thus, the trial court erred in upholding the agency decision finding otherwise.

¶20 The Solicitation required every bidder to submit Certificates of Conformance for the scale bid. A certificate of conformance is issued based on testing in participating laboratories and constitutes evidence of conformance of a device with the requirement with Handbook 44.[3] The NIST produces Handbook 44, which provides the industry standard for weights and measures and details the requirements for scales used as a highway law enforcement scale. Cardinal and Unibridge provided NTEP Certificates to ODOT as part of their bids.

¶21 Unibridge provided the testimony of Henry Opperman, an expert on Handbook 44. Opperman testified he worked for the National Bureau of Standards Office of Weights and Measures for over 28 years and was Chief of the Office of Weights and Measures for the NIST for 5 years, inter alia. He stated he was a technical advisor to the committee that drafted Handbook 44, which he helped draft. Opperman evaluated Cardinal's Certificates and found them to be non-compliant with Handbook 44.[4] Conversely, Langford testified the Certificates were compliant with Handbook 44.[5] ODOT further relied on a letter from Jim Truex, the NTEP Administrator, rejecting Opperman's concerns with Cardinal's Certificates.[6]

¶22 Finally, Surrett and Allen testified they reviewed Cardinal's bid and Certificates of Conformance and found them to be in order. However, Surrett acknowledged that he merely confirmed that a Certificate of Conformance was submitted with Cardinal's bid purporting to say the scale conformed to Handbook 44. Surrett and Allen both testified that if Cardinal's bid was not compliant with Handbook 44, they would not consider this a nonresponsive bid. Rather, it would be a contract compliance issue after the scale was installed. Both believed the contract must be performed before it could be determined whether the scale complied with Handbook 44.

¶23 The ALJ made the following findings of fact from the evidence presented:

12. The Solicitation [required] that the supplier who is awarded the contract must comply with all federal regulations relating to the truck scale, including any relevant portions of Handbook 44 requirements relating to scales.

13. All bidders responding to Solicitation ... were required to submit with their bids certificates of compliance showing the relevant parts of the scale system proposed by the bidder would be compliant with state and federal requirements relating to this acquisition, including Handbook 44 requirements.

***

17. In compliance with the terms of the Solicitation, ... Cardinal ... provided Certificates of Conformance from the [NTEP], and the NTEP Certificates provided that the scales proposed ... were in compliance with the applicable technical requirements of Handbook 44.

***

22. The Cardinal bid ... was determined by the committee to be the most responsive bid meeting the requirements of the Solicitation, Scope of Work and other Solicitation documents, ...

***

42. [Unibridge] has failed to prove its claims by a preponderance of the evidence that the contract award in connection with Solicitation ... was improperly awarded under the Central Purchasing Act and rules relating to the same; ...

¶24 After reviewing the appellate record, we cannot find the ALJ's ruling was clearly erroneous in view of the evidence produced at the hearing. The ALJ determined that Cardinal provided Certificates of Conformance in compliance with the terms of Handbook 44, and ultimately the Solicitation, and that Unibridge failed to prove the contract was improperly awarded to Cardinal. The evidence before the ALJ was clearly conflicting on these issues of fact. However, there is testimony supporting the ALJ's findings. An appellate court may not substitute its judgment for that of the agency on its factual determinations. Agrawal, 2015 OK 67, at ¶ 15, 364 P.3d at 20 (citing McCrady, 2007 OK 39, at ¶ 10, 176 P.3d at 1200-01); 75 O.S.2011, § 322. Accordingly, this proposition of error is denied.

¶25 The trial court's November 13, 2015, order which affirmed the decision of ODOT denying Unibridge's protest of a bid awarded to Cardinal is therefore affirmed.

¶26 AFFIRMED.

FISCHER, P.J. and RAPP, J., concur.

FOOTNOTES

[1] OAC: 260:115-3-19 was previously found at 580:16-3-21.

[2] The Requisition provides:

1. Demolition and replacement of the eastbound scale and pit
2. Labor and equipment to demolish and remove the existing scale, pit, foundation and pavement as necessary to construct the new scale and pit
3. Excavate and provide compacted backfill, as necessary to facilitate the construction of the new pit.
4. Dispose of concrete debris
5. Design plans for new pit, scales and approach slab shall be designed and sealed by a professional engineer, registered in State of Oklahoma
6. Form and pour a new pit and approach to provide smooth transition and to eliminate separation
7. Form and pour foundations to accommodate installation of a new multi-platform axle weigh system built to fit in a new pit dimension
8. Fabricate and install a three (3) platform load cell based vehicle static scale that meet the following requirements: ...
9. Submit shop drawings prior to fabrication of scales
10. Piers for adjoining scales should accommodate three (3) sections and be of sufficient capacity to support the weights shown in section (8).
11. Deliver to site and install new concrete deck scales
12. Pour and cure concrete for the new pit, foundations, scale decks and approach slab
13. Wire new scale installation
14. Instrumentation shall consist of a new GS3 60 series meter ...
15. Scales shall be tested, calibrated, certified and sealed for use
16. Labor, equipment and materials to install a new UBSMS weigh system or an approved equal on the scale. The system should provide continuous monitoring of load cell performance to identify potential problems and be accessible via internet for troubleshooting and diagnostics.

[3] Handbook 44 establishes the standards. A national evaluation program, NTEP, evaluates and tests scales and other weighing devices to see if they comply with Handbook 44. If the test results comply with Handbook 44, a Certificate of Conformance is issued for the scale or other device that was evaluated.

[4] Opperman testified:

There are two areas in the bid that I question in terms of comparison with the specifications. First of all, I don't believe it complies with Handbook 44 in terms of the requirement that relates the load cell minimum verification division, which is called v-min as it relates to the number of load cells in the scale.

Secondly, I also believe the certificate of the conformance that's cited in the bid does not cover the model and the capacity of the cell - or the scale that's proposed for installation.

Opperman testified Cardinal's bid did not comply with the v-min, as the load cell that Cardinal proposed to use in this scale exceeded the value that Handbook 44 says is acceptable. Opperman rejected Langford's assertion that the three platforms could be considered separately in the v-min calculation.

With respect to the second issue, Opperman testified the Solicitation requested a capacity of 385,000 pounds. However, Cardinal's certificate only covered a range of capacity up to a maximum of 270,000 pounds. Thus, Opperman stated the Solicitation is beyond the range of what is covered by Cardinal's certificate of conformance.

[5] Langford disagreed with Opperman's testimony, stating that each of the three platforms should be considered separately in the v-min calculation and not as an entire weighing system. Langford stated he's requested a proposed change to the v-min issue to the specification and tolerances committee, requesting a change in Handbook 44. Langford further testified that Cardinal's certificate covers the models that NTEP certified that comprise its weighing system. For example, its certificate of conformance for the scale lists model series and various parameters, up to 270,000 pounds. Langford contends the certificate covers each of the three individual platforms and not the weighing system as a whole. Thus, each scale is fully certified.

[6] With respect to the v-min issue, Truex stated there are "differing interpretations and applications of the v-min formulas ... and [Handbook 44] does not provide guidance... ." Truex further found no issue with other concerns raised by Opperman.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 101, 857 P.2d 53, 64 OBJ 2328, Indiana Nat. Bank v. State Dept. of Human Services
Discussed
 2002 OK 79, 57 P.3d 571, TUBBS v. STATE EX REL. TEACHERS' RETIREMENT SYSTEM
Discussed
 2007 OK 39, 176 P.3d 1194, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY v. McCRADY
Discussed at Length
 1975 OK 75, 536 P.2d 335, CARPET CITY v. STILLWATER MUNICIPAL HOSP. AUTH.
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 2015 OK 67, 364 P.3d 618, AGRAWAL v. OKLAHOMA DEPT. OF LABOR
Discussed at Length
 1986 OK 6, 716 P.2d 654, 57 OBJ 788, Gilbert Cent. Corp. v. State
Discussed at Length
Title 61. Public Buildings and Public Works
 Cite
Name
Level

 61 O.S. 102, Definitions
Cited
 61 O.S. 101, Short Title
Discussed
 61 O.S. 103, Competitive Bidding Required
Cited
Title 74. State Government
 Cite
Name
Level

 74 O.S. 85.1, Short Title
Cited
 74 O.S. 85.2, Definitions
Discussed
 74 O.S. 85.45j, Requisition for Product or Service by Sole Source Contract
Cited
Title 75. Statutes and Reports
 Cite
Name
Level

 75 O.S. 318, Judicial Review
Cited
 75 O.S. 322, Setting Aside, Modifying, or Reversing of Orders - Remand - Affirmance
Discussed at Length